IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2008

Charles R. Fulbruge III
Clerk

No. 06-20980

RANDY EDWARD GOODRUM

Petitioner Appellant

v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice, Correctional Institutions Division

Respondent Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

REAVLEY, Circuit Judge:

Randy Edward Goodrum appeals the district court's summary judgment denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Goodrum's petition was based solely on the State's alleged denial of his Sixth Amendment right to a speedy trial. Because we agree with the district court that the state court's rejection of Goodrum's speedy trial claim was not objectively unreasonable, we affirm.

## I. Factual and Procedural Background

On October 27, 2000, Goodrum was charged in Harris County under two separate indictments for aggravated sexual assault. Another Harris County indictment against Goodrum for aggravated sexual assault was filed on May 18,

2000.  Before these indictments were issued, Goodrum had been arrested in Brazoria County for another charge of aggravated sexual assault.  He was tried on that offense, and, on September 28, 2001, was adjudged guilty, sentenced to life in prison, and transferred to the Texas Department of Criminal Justice.

Goodrum received a letter dated November 12, 2001, notifying him that Harris County had lodged a detainer against him under the indictments.  Two days later, Goodrum sent a letter to the Harris County District Attorney's office in which he expressly invoked his right to a speedy trial and requested that he be bench warranted to Harris County to answer to those charges.  He also stated that the detainers were "detrimental" to his incarceration.  Goodrum sent similar letters to the District Attorney on March 4, 2002, and May 12, 2002.  He received no response.

On January 8, 2003, Goodrum sent to the Harris County District Clerk a request for information regarding the pending indictments, in particular, the names of the complainants, the dates of the offenses, probable cause affidavits, the court number where the cases were pending, and copies of the indictments.  The District Clerk responded with a letter invoking a state law which exempts governmental bodies from complying with a request for information from, among other persons, an individual imprisoned in a correctional facility.

On October 19, 2003, Goodrum sent yet another letter, this time addressed to the District Attorney himself.  In that letter, Goodrum referenced his previous letters and again requested that he be bench warranted to Harris County.  He also mentioned that he was "concerned" about the impact of the delay on his ability to mount a defense.  The District Attorney did not respond.

By March 23, 2004, Goodrum had been bench warranted to Houston, had appeared in court, and had filed a motion to dismiss the indictments for violation of his right to speedy trial.  The trial court conducted two hearings on Goodrum's motion on May 21, 2004, and June 4, 2004.  Goodrum and his mother testified

that Goodrum was worried and concerned about the charges while they were pending. The evidence presented by Goodrum also reflects that the detainers rendered him ineligible for "SSI approval" for a job in the prison library, precluded him from taking vocational courses, and disqualified him from taking college classes for free. Additionally, Goodum testified that the presence of the detainers precluded him from being considered for trustee status. He conceded, however, that even without the detainers his qualification for such status was subject to the approval of prison officials. The State did not controvert any of these contentions.

Goodrum asserted that the delay impaired his defense. Goodrum contended that the Brazoria County conviction became final in 2003 and therefore became available to impeach him if he were to testify in his own behalf.[1] However, the State stipulated that it would not use that conviction to impeach Goodrum if he were to testify in his own defense, although it might rely on it to enhance his sentence.

The trial court ruled that Goodrum had failed sufficiently to establish prejudice resulting from the delay and denied his motion to dismiss. Goodrum later entered a plea of nolo contendere to three charges of aggravated assault with a deadly weapon, conditioned upon his ability to appeal the denial of his speedy trial claim and in exchange for a sentence of 10 years in prison and the

---

[1] Goodrum also argued that the delay affected the memories of key witnesses, whose testimony would allegedly have corroborated his assertion that he had dated the alleged victims and the sex was therefore consensual. After hearing the testimony presented by these potential witnesses, the trial court rejected this contention. Later, Goodrum pressed this argument on appeal in state court and in his federal habeas proceedings before the district court. On the instant appeal, however, Goodrum "voluntarily abandoned" this contention. That portion of the state court decision is therefore not relevant to our analysis.

dismissal of a fourth charge. The trial court certified his right to appeal the ruling on the motion to dismiss.[2]

Goodrum appealed. The Texas Court of Appeals applied the four-factor balancing test from Barker v. Wingo[3] and affirmed the trial court's ruling that the State had not violated Goodrum's right to a speedy trial.[4] Noting that Goodrum had been indicted in October 2000 and May 2001, but was imprisoned in and being tried in Brazoria County until September 28, 2001, the court concluded that "the length of the delay was well beyond" that which triggered examination of the remaining Barker factors and weighed this factor "heavily against the State."[5] The court then found the record to be "silent as to the reasons for the delay," and declined to presume either intentional delay by the State or valid reason for the delay. Accordingly, the court weighed the reasons for the delay "against the State, but not heavily so."[6] Because the court agreed that Goodrum "persistently demanded his right to a speedy trial in a timely manner," it also weighed Goodrum's assertion of the right in his favor.[7]

Finally, the court addressed the various forms of prejudice alleged by Goodrum. Regarding Goodrum's asserted anxiety and concern over the pending charges, the court noted recent authority from the Texas Court of Criminal Appeals "stat[ing] that as [Goodrum] was incarcerated most of the time in

---

[2] Because Goodrum's plea was expressly conditioned on his right to appeal the denial of his speedy trial claim, he adequately preserved that claim in subsequent proceedings. Cf. United States v. Bell, 966 F.2d 914, 915 (5th Cir. 1992) (recognizing express conditional guilty pleas under FED. R. CRIM. P. 11(a)(2)).

[3] 407 U.S. 514, 92 S. Ct. 2182 (1972).

[4] Goodrum v. State, No. 08-04-00265-CR, 2005 WL 2592219 (Tex. App.–El Paso 2005, pet. denied).

[5] Id. at *3.

[6] Id.

[7] Id.

4

question, we are mainly concerned with whether or not [his] ability to defend himself was prejudiced by the delay."[8] In a footnote, the court also acknowledged Goodrum's asserted worsened prison conditions due to his loss of eligibility for certain jobs, trustee status, and free schooling.[9] The court distinguished Goodrum's circumstances from those in a state court case where the loss of trustee status and educational opportunities was associated with the defendant's loss of good time credit and impliedly rejected these detriments as not probative of prejudice.[10]

The final contention the court addressed was the alleged impairment of Goodrum's defense. Goodrum had argued that during the relevant period his conviction in Brazoria County became final and was therefore available to impeach his testimony. The court, however, focused on Goodrum's "twelve to thirteen prior felony convictions," the last of which was in 1993. Although Goodrum asserted that these prior convictions were too remote to be admitted under state rules of evidence, the court disagreed. The court reasoned that Texas Rule of Evidence 609(a) excepts from the rule against admission of felony convictions over 10 years old any such conviction "if the witness's lack of reformation is shown by evidence of an intervening felony conviction."[11] Thus, the admissibility of Goodrum's numerous other prior felonies for impeachment purposes "greatly lessen[ed] any prejudice" attributable to the Brazoria County conviction.[12] Having rejected all the forms of prejudice alleged by Goodrum, the court weighed this factor "in favor of the State," and concluded that the balance

---

[8] Id. at *4.

[9] Id. at *4 n.2.

[10] Id. at 4 & n.2.

[11] Id.

[12] Id.

of factors "weighs against a finding that [Goodrum's] right to a speedy trial was impaired.[13]

The Texas Court of Criminal Appeals denied Goodrum's petition for review. Goodrum did not file a state habeas petition, but filed a petition for habeas relief in federal district court.

The district court granted summary judgment in favor of the State and dismissed Goodrum's habeas petition. The court's opinion largely tracked that of the state appeals court, except for the portion dealing with Goodrum's arguments relating to prejudice.[14] In that latter part of the opinion, the district court noted in pertinent part Goodrum's assertions of "undue anxiety and concern" caused by the delay that the State did not challenge and which the court viewed to have been established by Goodrum's pleadings.[15] Regarding the availability of the Brazoria County conviction for impeachment purposes, the district court deferred to the state court's evidentiary ruling regarding the admissibility of Goodrum's numerous other prior convictions, explaining it was bound by that finding.[16] The court also noted the State's stipulation that it would not use the conviction in Brazoria County to impeach Goodrum's testimony if he chose to testify at trial. Thus, Goodrum had not shown "that the delay resulted in the potential use of otherwise inadmissible criminal convictions against him for impeachment purposes."[17] Addressing Goodrum's ineligibility

---

[13]  Id. at **4-5.

[14]  Goodrum v. Quarterman, No. Civ. A. H-06-1329, 2006 WL 3420245, at **6-9 (S.D. Tex. Nov. 21, 2006).

[15]  Id. at *8.

[16]  Id.

[17]  Id.

for job assignments, educational programs, and preferential custody status, together with his uncontroverted anxiety and concern, the court explained:

> In short, the record shows that the delay resulted in petitioner's experiencing anxiety and concern, and being ineligible to participate in certain prison programs. The importance of these results is not without significance; but, in a balance of all four Barker factors, it cannot be said that petitioner's constitutional right to a speedy trial was violated.[18]

The district court concluded that the state court did not unreasonably reject Goodrum's speedy trial claim and granted the State's motion for summary judgment.[19]  It also denied Goodrum's motion for a certificate of appealability, but we granted the certificate and authorized Goodrum to file the instant appeal.

## II.  Standard of Review

We review de novo the district court's grant of summary judgment denying a state petitioner's request for habeas relief. Salazar v. Dretke.[20] We may affirm a summary judgment on any ground supported by the record, even if it differs from that relied upon by the district court.[21]  Our review of the district court's legal conclusions is de novo, but we review the court's factual findings only for clear error.  Busby v. Dretke.[22]

Entitlement to habeas relief was restricted by Congress in 1996 by the Antiterrorism and Effective Death Penalty Act.  As will be clear to the reader, the severity of that statute is demonstrated in this case.  Now a federal court

---

[18]  Id. at *9.

[19]  Id.

[20]  419 F.3d 384, 394 (5th Cir. 2005).

[21]  Id.

[22]  359 F.3d 708, 713 (5th Cir. 2004).

may grant a writ of habeas corpus only if the state court failed in one of two grounds. First, relief may be granted if the state court's resolution of a petitioner's claim on the merits was "contrary to" or an "unreasonable application of" clearly-established federal law as declared by the Supreme Court. 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly-established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor.[23] A state court's application of clearly established federal law is "unreasonable" within the meaning of AEDPA when it correctly identifies the governing principle but applies it to the facts of the case in an objectively unreasonable manner. Wiggins v. Smith.[24] An unreasonable application may also occur if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."[25] Thus, "[b]efore this court may grant habeas relief under the unreasonable application clause, the state court's application of clearly established federal law must be more than merely incorrect or erroneous, it must be objectively unreasonable." Young v. Dretke.[26]

Second, habeas relief is appropriate if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence" presented

---

[23] 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).

[24] 539 U.S. 510, 520, 123 S. Ct. 2527, 2535 (2003).

[25] Williams, 529 U.S. at 407, 120 S. Ct. at 1520.

[26] 356 F.3d 616, 623 (5th Cir. 2004); see also Wiggins, 539 U.S. at 520-21, 123 S. Ct. at 2535.

to the state court.[27]   However, the state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.  Reed v. Quarterman.[28]

## III.  Discussion

Though not addressed by the district court, we first note that Goodrum has exhausted his speedy trial claim as generally required under AEDPA.  A state prisoner must present his claims to the state court and exhaust state remedies before seeking federal habeas relief.  Martinez v. Johnson.[29]   The exhaustion requirement is satisfied "when the substance of the federal habeas claim has been fairly presented to the highest state court," either through direct appeal or state habeas proceedings.  Morris v. Dretke.[30]   Here, Goodrum's sole claim on federal habeas is the asserted violation of his right to speedy trial, a claim that he presented in state court and pursued on direct appeal to the state's highest court.  Goodrum has therefore exhausted his state law remedies, and we will therefore review the merits of the speedy trial claim.

Goodrum contends that the district court erred in holding the state court's rejection of his speedy trial claim was not objectively unreasonable or contrary to clearly-established federal law.  Specifically, Goodrum argues that the state court  failed to accord due weight to his repeated assertion of his right to speedy trial throughout the pendency of the indictments, and failed appropriately to presume prejudice, or, in the alternative, to construe the uncontroverted proof of his anxiety and concern and loss of certain prison benefits and privileges as

---

[27]   28 U.S.C. § 2254(d)(2).

[28]   504 F.3d 465, 471 (5th Cir. 2007); see § 2254(e)(1).

[29]   255 F.3d 229, 238 (5th Cir. 2001).

[30]   413 F.3d 484, 491 (5th Cir. 2005) (internal quotation mark and citation omitted).

an adequate demonstration of prejudice. For the reasons that follow, we agree with the district court's conclusion that the state court neither contravened nor unreasonably applied clearly-established federal law when it denied Goodrum's speedy trial claim.

The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. U.S. CONST. amend. VI; Klopfer v. North Carolina.[31] A violation of the speedy trial right, if found, requires dismissal of the indictment. See Strunk v. United States.[32] In Barker, the Supreme Court prescribed several factors to be considered when evaluating a speedy trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant.[33] None of these factors is either necessary or sufficient to find a speedy trial violation; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant."[34] The speedy trial inquiry therefore involves a "difficult and sensitive" balancing of these factors under the particular circumstances of a given case.[35]

Because the state appellate court properly identified the Barker test as the framework for analyzing Goodrum's speedy trial claim, AEDPA limits our focus to the objective reasonableness of the result of the state court's balancing of the Barker factors under the facts in Goodrum's case. See Santellan v. Cockrell.[36]

---

[31] 386 U.S. 213, 223-26, 87 S. Ct. 988, 993-95 (1967).

[32] 412 U.S. 434, 439-40, 93 S. Ct. 2260, 2263 (1973).

[33] 407 U.S. at 530, 92 S. Ct. at 2192.

[34] Id. at 533, 92 S. Ct. 2182.

[35] Id. at 530, 533, 92 S. Ct. at 2192, 2193.

[36] 271 F.3d 190, 193-94 (5th Cir. 2001) (construing the focus under AEDPA to be the result, not "every jot" of the state court's reasoning).

Nonetheless, to facilitate our evaluation of the reasonableness of the state court's decision, we will conduct a limited review of the state court's analysis of each Barker factor. We keep in mind, however, the fact that the state court's preliminary conclusions regarding one or more of the factors, even if contrary to or objectively unreasonable in light of controlling Supreme Court precedent, are insufficient to grant habeas relief, so long as we find the ultimate decision reached by the state court not objectively unreasonable. Cf. Jackson v. Ray.[37]

## A. Length of the delay

The first Barker factor, the length of the delay, consists of a two-part inquiry. First, the delay must be extensive enough to give rise to a presumption of prejudice that triggers examination of the remaining Barker factors. See Doggett v. United States.[38] As the Supreme Court has observed, courts generally view a delay of approximately one year as sufficient to require a full Barker analysis.[39] This is the rule in the Fifth Circuit. United States v. Serna-Villarreal.[40] If this threshold showing is made, the court must examine the extent to which the delay extends beyond the bare minimum required to trigger a Barker analysis, because "the presumption that pretrial delay has prejudiced the accused intensifies over time."[41]

---

[37] 390 F.3d 1254, 1260 (10th Cir. 2004) (similarly reviewing the state court's preliminary factors underlying its speedy trial analysis but noting that habeas relief is appropriate only if its decision was contrary to or an unreasonable application of Supreme Court precedent).

[38] 505 U.S. 647, 651-52, 112 S. Ct. 2686, 2690-91 (1992); see also Barker, 407 U.S. at 530-31, 92 S. Ct. at 2192.

[39] Id. at 652 n.1, 112 S. Ct. at 2691.

[40] 352 F.3d 225, 230 (5th Cir. 2003) (citing United States v. Bergfeld, 280 F.3d 486, 488 (5th Cir. 2002)).

[41] Doggett, 505 U.S. at 652, 112 S. Ct. at 2691.

The parties agree that the 2 1/2 year delay between Goodrum's conviction in Brazoria County on September 28, 2001, and his initial appearance in Harris County on March 23, 2004, both exceeds the threshold required to trigger full consideration of the Barker factors and weighs in Goodrum's favor. However, the State contends that, in concluding that this factor should weigh "heavily against the State," the appellate court must have erroneously calculated the delay as the nearly 4-year period after the first Harris County indictment issued on October 27, 2000, until his March 2004 initial appearance, including that period during which Goodrum was being tried in Brazoria County for a separate offense.

The State's contention is belied by the opinion of the state appeals court. Although the court observed that the Harris County indictments were handed down in October 2000 and May 2001, it emphasized that until September 28, 2001, Goodrum "was incarcerated and being tried in Brazoria County . . . ."[42] This statement strongly suggests that the court excluded from its calculation that initial period during which Goodrum was being prosecuted for the charge in Brazoria County and based its analysis only on the 2 1/2 years following Goodrum's conviction for that offense. Moreover, given that the delay was more than double the minimum necessary to trigger the Barker analysis, the state appeals court reasonably weighed this factor heavily in Goodrum's favor.

## B. Reason for the delay

The weight assigned to a state's reasons for post-accusation delay depends on the reasons proffered.[43] At one extreme, a deliberate delay to disadvantage

---

[42]  Goodrum, 2005 WL 2592219, at *3.

[43]  Barker, 407 U.S. at 531, 92 S. Ct. at 2192.

the defense is weighted heavily against the state.[44]  At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state.  See Cowart v. Hargett.[45]  Between these extremes fall unexplained or negligent delays, which weigh against the state, "but not heavily."[46]

Although Goodrum at oral argument characterized the conduct of the State as "grossly" and not merely negligent, in his briefs he does not challenge the appeals court's conclusion that "[t]his factor weighs against the State, but not heavily so."[47]  We agree with the state court's analysis.  The State clearly knew of Goodrum's whereabouts during the 2 1/2 years before his initial appearance in Harris County, as is reflected by the State's notice to Goodrum regarding the detainers for the Harris County charges and the numerous letters Goodrum sent from prison to the District Attorney's office inquiring about the indictments.  But for this factor to weigh heavily against the State, Goodrum must have shown that the State delayed the prosecution in order to gain  an "impermissible advantage at trial."[48]  Because the State proffered no explanation to justify the delay, and Goodrum did not demonstrate deliberate conduct by the State,[49] the state court correctly declined to presume the delay was either

---

[44]  Id.

[45]  16 F.3d 642, 647 (5th Cir. 1994) (discussing Barker).

[46]  Id.; see also Barker, 407 U.S. at 531, 92 S. Ct. at 2192 (viewing negligence as a "more neutral reason . . . [that] should be weighted less heavily" than an intentional delay).

[47]  Goodrum, 2005 WL 2592219, at *3.

[48]  Doggett, 505 U.S. at 656, 112 S. Ct. at 2693; see also United States v. Frye, 372 F.3d 729, 738 (5th Cir. 2004) (distinguishing between delay to allow for further investigation and the type of impermissible delay described in Doggett and Barker).

[49]  Goodrum for the first time in his reply brief challenges the state court's implied factual finding that the State did not intentionally delay its prosecution, an argument he failed to raise before the district court.  Generally, arguments not raised in an appellant's opening

13

intentional or justified. As such, the State's unexplained failure expeditiously to bring Goodrum to trial on the Harris County charges supports the court's finding of official negligence that weighs against the State, albeit not heavily.

## C. Assertion of the right

Based on the numerous letters sent by Goodrum to the Harris County District Attorney's office in which he vigorously and repeatedly asserted his right to speedy trial, Goodrum contends that the state appeals court contravened clearly established Supreme Court precedent by failing to weigh this third Barker factor "strongly" in his favor. The state appeals court noted that Goodrum had "persistently demanded his right to a speedy trial in a timely manner," viewed this factor to weigh in favor of Goodrum, but did not specifically assign it heavy or strong weight.[50] The district court did not address this issue.

Barker instructs that "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."[51] This is because the vigorousness with which a defendant complains about the delay will often correspond to the seriousness of the deprivation.[52] Moreover, one justification articulated in Barker for adopting a flexible balancing test is the ability of courts to vary the weight assigned to a defendant's invocation of the right depending on its

---

brief are waived. See United States v. Fields, 483 F.3d 313, 352 n.36 (5th Cir. 2007). Additionally, "[w]e have repeatedly held that a contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief." Johnson v. Puckett, 930 F.2d 445, 448 (5th Cir. 1991).

In any event, we find that Goodrum in the state court proceedings did not show what, if any, advantage the State gained by waiting to try him under the indictments or that the State delayed his prosecution to obtain that advantage.

[50] See Goodrum, 2005 WL 2592219, at *3.

[51] 407 U.S. at 531-32, 92 S. Ct. at 2192 (emphasis added).

[52] Id.

frequency and forcefulness.[53] Accordingly, we have applied these clearly articulated principles from Barker and construed vigorous and timely assertions of the right to speedy trial as weighing strongly or heavily in the defendant's favor.[54]

The evidence presented in the state court proceedings reflects that Goodrum, within 2 days of receiving notice of the detainers in Harris County on November 12, 2001, and throughout the next 2 1/2 years, doggedly invoked his speedy trial right in numerous letters he sent to the District Attorney's office. When he was finally bench warranted to Houston and brought to court for his initial appearance on March 23, 2004, Goodrum immediately moved for dismissal on speedy trial grounds. Under the Supreme Court's precedent in Barker, Goodrum's persistent invocation of the right must weigh strongly in his favor and hence, the state court's failure to accord due weight to this factor is contrary to clearly-established law.

## D. Prejudice

The final prong of the Barker test requires an assessment of prejudice "in the light of the interests of defendants which the speedy trial right was designed to protect."[55] These interests include: (1) prevention of oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility of impairment to the defense.[56] Stated differently,

---

[53]   Id. at 528-29, 92 S. Ct. at 2191.

[54]   See United States v. Cardona, 302 F.3d 494, 498 (5th Cir. 2002); see also, e.g., Cain v. Smith, 686 F.2d 374, 383-84 (6th Cir. 1982) (construing Barker to require that a defendant's diligent and persistent assertion of his right to speedy trial "will weigh most heavily against the government").

[55]   Barker, 407 U.S. at 532, 92 S. Ct. at 2193.

[56]   Id.

"unreasonable delay between formal accusation and trial threatens to produce" these recognized categories of harm.[57]

Goodrum first suggests that the Supreme Court's decision in Doggett relieves him of the burden of making a particularized showing of prejudice resulting from the delay. We have construed Doggett to presume prejudice when the three initial Barker factors weigh heavily in favor of the defendant.[58] Goodrum has not been made this showing, however, based on our conclusion that only two of the three factors—length of delay and invocation of the right to speedy trial—are weighted heavily in his favor.

Additionally, the 2 1/2 year length of the delay in this case falls well short of the 6 years attributed to official negligence in Doggett and which warranted a presumption of prejudice in that case.[59] The presumption recognized in Doggett stemmed from the Court's reasoning that the likelihood of evidentiary prejudice, though difficult to prove, increases in tandem with the length of the delay.[60] At least when the delay results from official negligence, Doggett therefore does not clearly establish that prejudice is presumed except where length of the delay is exceptional. Indeed, under our precedent, as well as that of other courts, the Doggett presumption applies only where the delay is at least 5 years.[61] Because Goodrum was not entitled to a presumption of prejudice

---

[57] Doggett, 505 U.S. at 654, 112 S. Ct. at 2692.

[58] Serna-Villarreal, 352 F.3d at 231.

[59] Doggett, 505 U.S. at 652-53, 658, 112 S. Ct. at 2691, 2694.

[60] See id. at 655, 112 S. Ct. at 2693 (explaining that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify"); id. at 657, 112 S. Ct. at 2693 ("[T]he weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness.").

[61] See Bergfeld, 280 F.3d at 491; see also United States v. Brown, 169 F.3d 344, 349, 351 (6th Cir. 1999) (5 1/2 years); United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992)

under Doggett, the state court therefore correctly required Goodrum to make a particularized showing of how the delay impacted him.

Alternatively, Goodrum identifies four forms of prejudice he allegedly suffered due to the delay. Each is discussed in turn.

### 1. Admissibility of Brazoria County conviction

Goodrum contends that his conviction in Brazoria County became final during the pendency of the indictments and therefore became available to impeach his testimony at trial. As noted by the district court, the state appeals court reasoned that whatever prejudice may have resulted from the admissibility of the recent Brazoria County conviction was substantially mitigated by Goodrum's 12 to 13 other prior felony convictions, which, though over 10 years old, could also be used to impeach Goodrum's testimony under Rule 609(b) of the Texas Rules of Evidence.[62] Goodrum, characterizing this ruling as an "unreasonable determination of the facts" unsupported by any evidence presented by the State, asserts the district court erred when it declined to review the state court's conclusion that the prior convictions were not too remote to be admitted. We disagree. The admissibility of Goodrum's numerous other convictions for impeachment purposes involves a question of law, not fact. More importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" such as the admissibility of evidence under state procedural rules. Estelle v. McGuire.[63] Goodrum neither asserts nor demonstrates that the evidentiary ruling itself violated a specific constitutional right or rendered his trial fundamentally unfair, the sole exceptions on habeas to the non-reviewability of such a ruling. See Johnson v.

---

(5 years).

[62] See Goodrum, 2006 WL 3420245, at *8; Goodrum, 2005 WL 2592219, at *5.

[63] 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).

Puckett.[64]  The district court did not err in deferring to the ruling of the state court regarding the admissibility of Goodrum's other convictions.

The availability of the Brazoria County conviction in this case also resulted in no actual prejudice to Goodrum.  Not only had the State stipulated that it would not use that conviction to impeach him, but the trial itself never occurred because Goodrum pleaded nolo contendere to the Harris County charges.  To the extent that Goodrum relies on the State's initial threat to enhance Goodrum's sentence based on the conviction, the records reflect that the State later agreed to abandon the enhancement paragraphs in exchange for his plea.  The prior conviction was therefore not used as a basis for enhancing Goodrum's sentence.  In sum, the state court reasonably determined that Goodrum was not prejudiced by the Brazoria County conviction.

### 2.  Impediment to the ability to investigate

Goodrum additionally argues prejudice to his ability to investigate based on the District Clerk's denial of his request for information about the charges. The Clerk relied on Section 552.028 of the Texas Government Code, which exempts governmental agencies from complying with requests for information from, inter alia, a person who is imprisoned in a correctional facility.[65] Goodrum asserts that his inability to obtain "basic information" regarding names of the complainants, dates of the offenses, dates of the indictments, probable cause

---

[64]  176 F.3d 809, 820 (5th Cir. 1999).

[65]  The statute provides, in pertinent part:

(a) A governmental body is not required to accept or comply with a request for information from:

> (1) an individual who is imprisoned or confined in a correctional facility . . . .

TEX. GOV'T CODE § 552.028.

affidavits, the court number, and a copy of the indictments "severely impaired" his defense by rendering him unable to file unspecified motions or to contact unnamed witnesses whose memories might otherwise fade. The State contends Goodrum has waived this contention by failing to raise it before the state appeals or district courts.

Even assuming that Goodrum preserved this argument, his vague and conclusory allegations that the denial of information impeded his defense are insufficient to constitute proof of prejudice. See, e.g., United States v. Hayes.[66] While "'faded memory [of witnesses] may result in prejudice, we have held that in order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue.'" Jamerson v. Estelle.[67] Goodrum has not identified those witnesses whose memories he might have refreshed or demonstrated the requisite nexus between their testimony and a fact material to his defense. In fact, Goodrum has conceded that he cannot show that the delay "caused his witnesses to be unable to recall certain facts concerning the case." Goodrum similarly does not explain what motions he would have filed if the State had provided the requested information, let alone what those motions would have accomplished. We conclude that Goodrum has not shown prejudice to his case resulting from his inability personally to obtain information from the District Clerk regarding the pending indictments.

---

[66] 40 F.3d 362, 366 (11th Cir. 1994) (rejecting "conclusory allegations" that a delayed trial caused a witness's inability to recall certain events and that prejudice resulted from the unspecified "'erosion of exculpatory evidence and testimony'").

[67] 666 F.2d 241, 245 (5th Cir. 1982) (quoting United States v. Edwards, 577 F.2d 883, 889 (5th Cir. 1978)).

### 3. Anxiety and concern

According to Goodrum, the state court unreasonably discounted the relevance of evidence that he was generally worried and concerned about the pending charges, evidence that was not challenged by the State. The State responds that Goodrum's imprisonment for a life term on a separate charge undercuts his assertions of anxiety and concern stemming from the later indictments.

The state appeals court acknowledged Goodrum's asserted anxiety or depression but, citing a case from the Texas Court of Criminal Appeals, construed Goodrum's status as an individual incarcerated on another offense to shift the focus primarily to whether the delay affected his defense.[68] In doing so, the court impliedly viewed Goodrum's anxiety and concern as irrelevant to its prejudice analysis. Without directly addressing this aspect of the state court's opinion, the district court impliedly viewed Goodrum's uncontroverted anxiety or concern as some prejudice but ultimately deemed it inadequate to sustain his speedy trial claim.[69]

The "most serious" form of prejudice occurs when the delay undermines a defendant's ability adequately to prepare his case.[70] But we have already noted Barker's recognition of anxiety and concern of the accused as a type of cognizable harm that may result from a delayed trial, and other cases stress its independence from whatever impact the delay may or may not have on the defense.[71] It is equally established that one who is already in prison may

---

[68]   Goodrum, 2005 WL 2592219, at *4.

[69]   Goodrum, 2006 WL 3420245, at *9.

[70]   See Doggett, 505 U.S. at 654, 112 S. Ct. at 2692.

[71]   See, e.g., Moore v. Arizona, 414 U.S. 25, 27-28, 94 S. Ct. 188, 190 (1973) (per curiam) (emphasizing that prejudice in the speedy trial context is "not confined to the possible prejudice to [the] defense" but includes, among other things, the defendant's anxiety); United States v.

nonetheless suffer the same degree of "anxiety and concern accompanying public accusation" as someone at large. Smith v. Hooey.[72] Accordingly, the state court's rejection of Goodrum's anxiety and concern as probative of prejudice was unreasonable.

Nonetheless, we think Goodrum's generalized expressions of anxiety and concern amount to little more than a nominal showing of prejudice. Hooey described the "most corrosive" effect a detainer may have on an incarcerated individual as the "strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another [entity] at the conclusion [that] interferes with the prisoner's ability to take maximum advantage of his institutional opportunities."[73] Goodrum at oral argument attempted to associate the distress he felt with the added burden of having to defend himself against new charges when he was in the process of appealing the Brazoria County conviction. We find nothing in the record indicating anxiety and concern of this nature. There is likewise no evidence that Goodrum's anxiety interfered with his participation in rehabilitative activities or undermined his efforts toward self-improvement. We also take into account the fact that Goodrum was already serving a life sentence, itself a grim prospect, which renders it unlikely that the detainers caused him severe anxiety or concern.[74]

In short, Goodrum has not demonstrated that the anxiety he felt was of such an extreme degree that it differed in any way from that which would

---

Marion, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971) (explaining that "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense" and mentioning anxiety of the accused as one of potential threats of a delayed trial).

[72] 393 U.S. 374, 379, 89 S. Ct. 575, 577 (1969).

[73] Id., 89 S. Ct. at 578 (internal quotation marks omitted).

[74] Cf. Jamerson, 666 F.2d at 244 ("[I]n view of the pending death sentence, an outstanding armed robbery indictment could occasion little additional anxiety or concern.").

21

naturally be expected to accompany a defendant's awareness of pending charges. Given this minimal showing, the state court did not unreasonably view Goodrum's generalized anxiety and concern as insufficient to sustain his speedy trial claim.

### 4. Worsened conditions of confinement

Goodrum asserts that the conditions of his confinement were worsened because the detainers affected his classification and disqualified him from certain prison jobs and privileges. During the state court proceedings, Goodrum presented evidence that the detainers rendered him ineligible to be considered for outside trustee status or for a position in the prison library, and disqualified him entirely from taking vocational classes and from taking college classes for free. Goodrum argues that the state court unreasonably applied principles enunciated in Hooey when it concluded that the detainers did not affect the length of his sentence and, hence, were insufficient to establish prejudice. The State views the language in Hooey relied upon by Goodrum as dicta. In the alternative, the State contends that the impact of Goodrum's lost privileges was de minimis and therefore inadequate to support a speedy trial claim.

In Hooey, the Supreme Court held that a state was not exempted from the speedy trial requirement solely on the grounds that to bring a defendant to trial expeditiously would require it to seek the defendant's transfer from a federal prison where he was serving a lawfully-imposed sentence.[75] Central to the Court's reasoning was its recognition of ways in which a delayed trial could prejudice the interests of an individual already lawfully-incarcerated, much as it would a person jailed without bail on a yet-untried charge.[76] The Court

---

[75] 393 U.S. at 377, 89 S. Ct. at 576-77.

[76] See id. at 377-80, 89 S. Ct. at 576-78.

22

discussed as one type of potential prejudice the possibility of undue and oppressive incarceration prior to trial:

> First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.[77]

Thus, Hooey, in critical part, identified negative effects on the conditions of incarceration as a form of prejudice the speedy trial right was designed to protect. The Court's decision to remand the case to the Texas Supreme Court for further development[78] does not undercut in any way its emphasis on this and other identified interests as a basis for its holding that the State had a duty to provide a speedy trial. Accordingly, we reject the State's characterization of this language as mere dicta.

The state court deemed Goodrum's asserted loss of eligibility for certain jobs, trustee status, and educational opportunities to be insufficient to constitute prejudice stemming from worsened prison conditions.[79] Its reasoning distinguished Goodrum's disqualification from these prison programs from a prior state court decision in which "the loss of trustee status and schooling opportunities was directly linked to loss of good time credit."[80] The court thus impliedly required a demonstrated impact on the length of Goodrum's sentence before prejudice would be found. This analysis is incorrect. Hooey acknowledges

---

[77] Id. at 378, 89 S. Ct. at 577 (footnote omitted).

[78] Id. at 383, 89 S. Ct. at 579-80.

[79] Goodrum, 2005 WL 2592219, at *4 n.2.

[80] Id.

that unduly oppressive pretrial incarceration may occur when a defendant's sentence is lengthened but does not limit cognizable prejudice to that which increases the length of incarceration. Indeed, Supreme Court cases decided after Hooey explain that delays may prejudice a defendant by adversely affecting his prospect for rehabilitation, which facially has no bearing on the duration of his sentence.[81]

The district court, like the state court, credited Goodrum's assertions that the detainers rendered him ineligible to participate in certain prison programs, noting that the State did not dispute these allegations at the state court hearing.[82] Based on our review of the state court record, however, the evidence presented by Goodrum did not establish that he was actually deprived of some of the asserted privileges because of the detainers. For example, Goodrum admitted that trustee status is subject to approval by prison officials. The detainers disqualified Goodrum from being considered for trustee status, but Goodrum did not show that he would have been qualified for or would have attained that status but-for the detainers. This is also true with regard to the position Goodrum sought in the prison library. According to an official response to Goodrum's request, the presence of the detainer rendered him ineligible for "SSI approval" for the position. Goodrum made no further showing that he would have received SSI approval for the job if the detainers had not automatically disqualified him from consideration. Goodrum's loss of eligibility for being considered for these privileges does not equate to loss of the privileges themselves. The alleged impact of the detainers on his ability to attain trustee status and library job is clearly too attenuated to establish a causal link between the detainers and the loss of these privileges.

---

[81] See, e.g., Strunk v. United States, 412 U.S. 434, 439, 93 S. Ct. 2260, 2263 (1973); see also Moore, 414 U.S. at 27, 94 S. Ct. at 190.

[82] Goodrum, 2006 WL 3420245, at *9.

The record evidence does reflect that Goodrum was denied access to vocational classes and was unable to take college classes for free because of the detainers. But the concern expressed in Hooey regarding the potentially oppressive effect of detainers on incarcerated individuals related to "greatly worsened" prison conditions.[83] Loss of educational opportunities colorably falls under the broad heading of worsened prison conditions, but the impact of this loss on the conditions of Goodrum's confinement, whether viewed alone or aggregated with Goodrum's disqualification for trustee status and a library job, was facially insubstantial. Indeed, with respect to defendants not similarly incarcerated on a separate offense, the articulated interests protected by the speedy trial right involve serious and potentially long-lasting impacts on an individual's life such as deprivations of liberty, significant financial losses, loss of employment, severing of associations, and disruptions to family life.[84] Goodrum does not assert, and we do not find, that the magnitude of the impact of the detainers approximates the severity of these recognized harms. While we agree with Goodrum that the state court's outright rejection of his loss of prison privileges was unreasonable, we conclude that, even assuming that Goodrum's failure to obtain trustee status and the library job may be attributed to the detainers, those losses, combined with the deprivation of vocational classes and free college courses, constitute only a minimal showing of prejudice.

### 5. Balancing

---

[83] 393 U.S. at 378, 89 S. Ct. at 577.

[84] See Moore, 414 U.S. at 27, 94 S. Ct. at 190 (citing interference with liberty, disruption of employment, financial loss, and curtailment of associations as forms of prejudice apart from harm to a defendant's case (quoting Marion, 404 U.S. at 320, 92 S. Ct. at 463)); Barker, 407 U.S. at 532-33, 92 S. Ct. at 2193 (describing detrimental impacts such as loss of a job and disruption to family life).

We now come to the determinative question: whether the state court unreasonably concluded that the balance of all four Barker factors in this case does not establish a violation of the speedy trial right. We reiterate that our disagreement with some of the state court's preliminary conclusions does not provide grounds for reversal so long as we find the ultimate decision to be objectively reasonable.[85]

Goodrum contends that the unreasonableness of the state court's conclusion is apparent because all four factors weigh in his favor, in varying degrees, and none favor the State. Reviewing our preliminary findings, we have agreed with the state court's threshold conclusions that the length of delay strongly favors Goodrum, and the State's lack of diligence favors him, though not heavily. We additionally construed Supreme Court precedent to mandate that Goodrum's repeated assertion of the right be weighed heavily in his favor. Significantly, however, we concluded that Goodrum is not entitled to a presumption of prejudice under Doggett and therefore must prove that he suffered prejudice due to the delay in order to sustain his claim.

Regarding the last Barker factor, we recognize that Goodrum has shown some prejudice in the form of lost prison privileges, though we emphasize how minimal that showing was. Because AEDPA limits our review to the reasonableness rather than the correctness of the state court's decision, we need not and do not decide today the result we would reach if this case had come before us on direct appeal, and in particular, whether such a modest showing of prejudice would suffice when balanced with the other Barker factors. Instead, we conclude that it would not be unreasonable to view the insubstantial and limited prejudice proven by Goodrum, combined with the other relevant factors as we have found them, not to tip the balance enough in Goodrum's favor so as

---

[85] See Santellan, 271 F.3d at 193-94.

to establish a violation of the speedy trial right.  Accordingly, the state court's denial of Goodrum's speedy trial claim was not objectively unreasonable, and the district court's dismissal of Goodrum's habeas petition on summary judgment was proper.

AFFIRMED.