# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2013

No. 11-20796

Lyle W. Cayce
Clerk

RANDELL GLEN LAWS,

Petitioner–Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:07-CV-4472

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Petitioner Randell Glen Laws appeals from the district court's denial of his federal habeas petition. Because Laws fails to show that he was denied his constitutional right to a speedy trial or that the state courts unreasonably rejected his ineffective assistance of appellate counsel claim, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20796

## I. Facts and Procedural History

Fifteen years after Lyle Sacry's death, a cold-case investigation implicated Laws and two of his former relatives. The three were charged with murder and arrested. Laws's former relatives challenged extradition from West Virginia, but Laws waived extradition from Florida. The day after Laws returned to Texas, the state court appointed Randall Ayers as trial counsel.

Nearly twenty-three months passed before Laws stood trial. The State initially waited for the putative co-defendants' extradition, but it ultimately decided against trying them with Laws and declined to present their testimony. The State also moved for numerous continuances. Laws acquiesced to almost all of them, but he objected on a few instances. He twice moved for a speedy trial and on one occasion wrote to the state trial judge to complain about the delay.

Even so, Laws showed some ambivalence about the lengthy pretrial process. He filed a wide-ranging motion for discovery on the same day he filed his first motion for a speedy trial. He twice moved for additional investigative resources—the second time sixteen months after his arrest.

A jury eventually convicted Laws of murder, and he was sentenced to ninety-nine years in prison. Represented by Layton Duer on appeal, Laws contended that insufficient evidence supported the verdict. The intermediate appellate court affirmed Laws's conviction, and the Court of Criminal Appeals refused his petition for review. *See Laws v. State*, No. 01-04-847-CR, 2006 WL 241313 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (unpublished).

Laws timely filed for state habeas relief *pro se*, asserting in relevant part that the State violated his state and federal speedy-trial rights and that Ayers and Duer rendered ineffective assistance. Laws alleged that Ayers failed to aggressively assert his speedy-trial rights and that Duer failed to brief a speedy-trial claim on direct appeal. The state trial court procedurally barred Laws's speedy-trial claim, ruling that such claims were not cognizable in Texas habeas

proceedings, and determined that Laws received sufficient representation and suffered no prejudice. The Court of Criminal Appeals denied habeas relief on the trial court's findings without holding a hearing or issuing an order providing reasons.

Laws then filed for federal habeas relief, raising essentially the same issues he had presented in state court. The State moved for summary judgment, but conceded at a hearing that Laws did not procedurally default his Sixth Amendment speedy-trial claim. The magistrate judge concluded that the State violated Laws's speedy-trial rights and that Duer was constitutionally ineffective on direct appeal. He recommended granting habeas relief, and Laws moved for release from confinement.

The district court withdrew the reference and denied habeas relief. Applying *de novo* review to Laws's speedy-trial claim, the district court determined that the claim failed on its merits and, alternatively, that it was procedurally barred. Analyzing Laws's ineffective-assistance claim under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court ruled that Duer had no obligation to raise every nonfrivolous issue on appeal and that, regardless, Laws suffered no prejudice because the underlying speedy-trial claim lacked merit.

Laws moved for a Certificate of Appealability ("COA"), which the district court denied. This court granted a COA on "(1) whether Laws was denied his constitutional right to speedy trial; and (2) whether Laws was denied his constitutional right to the effective assistance of counsel because counsel did not raise the speedy trial issue on direct appeal." *Laws v. Thaler*, No. 11-20796, slip op. at 2 (5th Cir. Aug. 8, 2012). We consider these issues in turn.

No. 11-20796

## II. Speedy-Trial Claim[1]

In line with the district court's ruling, the State insists that Laws's speedy-trial claim is procedurally barred. A state procedural default, however, does not always preclude our review. We may reach the merits of potentially defaulted claims—and even apply *de novo* review—when doing so would result in the denial of habeas relief. *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a)."); *Roberts v. Thaler*, 681 F.3d 597, 605 (5th Cir.), *cert. denied*, 133 S. Ct. 529 (2012) ("While our normal procedure is to consider issues of procedural default first, we may nonetheless opt to examine the merits first, especially when procedural default turns on difficult questions of state law."). Because Laws's speedy-trial claim fails under *de novo* review, we do not consider whether the district court properly reimposed the procedural bar despite the State's concession that it did not apply.[2]

---

[1] We confine our review of this claim to the state court record. Although Laws's speedy-trial claim was not adjudicated on the merits in state court, "§ 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011). We may consider only new facts "that could not have been previously discovered through the exercise of due diligence" *and* that "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii), (e)(2)(B). Because Laws provides no real explanation for why he could not have obtained affidavits from his mother, Ayers, and himself during state habeas proceedings, § 2254(e)(2) prevents us from considering the affidavits submitted in the district court. *See Williams v. Taylor*, 529 U.S. 420, 435 (2000); *Conner v. Quarterman*, 477 F.3d 287, 293 (5th Cir. 2007).

[2] We note, however, that Texas law permits defendants to raise Sixth Amendment speedy-trial claims both on direct appeal and in post-conviction proceedings. *See, e.g.*, *Ex parte Irvan*, No. WR-75428-01, 2011 WL 2378184, at *1 (Tex. Crim. App. 2011) (unpublished) (noting that Texas law bars state law speedy-trial claims from collateral proceedings, but that "the right to a speedy trial under the federal constitution[] is cognizable"); *Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002) ("[B]oth federal and Texas courts have confined the scope of post-conviction writs of habeas corpus to jurisdictional or fundamental defects *and*

No. 11-20796

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" Because it is difficult to pinpoint when a delay becomes unconstitutionally long, the Supreme Court has rejected a bright-line approach. "It is . . . impossible to determine with precision when" a specific delay crosses the line. *Barker v. Wingo*, 407 U.S. 514, 521 (1972). Thus, "'[t]he right of a speedy trial is necessarily relative,'" and courts must apply "a functional analysis of the right in the particular context of the case[.]" *Id.* at 522 (citation omitted). That analysis consists of "four separate enquiries: [1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker*, 407 U.S. at 530).

Considering the first factor, the nearly 23-month delay between Laws's arrest and trial weighs, at most, only slightly in his favor. *See Amos v. Thornton*, 646 F.3d 199, 206–07 (5th Cir. 2011) (reasoning that a delay of less than thirty months precludes the first *Barker* factor from "strongly favor[ing] the accused"); *Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008) (noting that a presumption of prejudice from delay alone "applies only where the delay is at least [five] years"). Because this "first factor serves a dual function" as both a substantive *Barker* factor and "a threshold requirement," we need not analyze the remaining factors unless the case involves a delay of over twelve months. *See United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003). As the delay here exceeds the 12-month trigger, we move on to the second factor.[3]

---

*constitutional claims.* Violations of statutes, rules, or other non-constitutional doctrines are not recognized." (emphasis added) (footnote omitted) (collecting cases)).

[3] We note that much of the delay should not count towards the speedy-trial "clock." About eleven months were spent waiting for the extradition of potential co-defendants. *See*

No. 11-20796

The second *Barker* factor—which party is more responsible for the delay—primarily concerns the justification for the delay. "[D]ifferent weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. Delays engineered "to hamper the defense" are "weighted heavily against the government." *Id.* Those caused by "negligence or overcrowded courts," however, are weighted "less heavily." *Id.* Some reasons, "such as a missing witness, should serve to justify appropriate delay" and will not count against the government. *Id.*

Laws admits that the State did not intend to prejudice his defense through the delays and that some delay was caused by the extradition challenges. That said, the State moved for virtually all of the continuances, and it concedes that one delay was caused by the trial court and at least another by the prosecutor. Even if these delays slightly weigh against the State, however, Laws agreed to the vast majority of resets.[4] At most, then, the second factor is neutral. *See Schreane*, 331 F.3d at 554 (concluding that the second *Barker* factor favored "no one" when delay could be blamed on both parties).

Turning to the third factor, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532. But not every invocation of the right will do. Defendants must

---

*United States v. Parker*, 505 F.3d 323, 327 (5th Cir. 2007) (noting, in the Speedy Trial Act context, that the "speedy trial clock" begins to run once all co-defendants have appeared in court); *United States v. Hernandez*, 457 F.3d 416, 421 (5th Cir. 2006) ("doubt[ing]" that delay incurred due to the Government waiting on a witness "amounted even to official negligence," even though the witness ultimately did not testify). Some of the delays, moreover, were attributable to Laws's requests for discovery and investigative resources. *See Nelson v. Hargett*, 989 F.2d 847, 852 (5th Cir. 1993) ("The speedy trial clock is properly tolled in cases where responsibility for the delay lies with the defendant rather than the state."). Although we decline to subtract months from the speedy-trial clock to pretermit a full *Barker* inquiry, the delay for speedy-trial purposes likely weighs even less in Laws's favor.

[4] When Laws opposed resets, he did so in close proximity to requests for more investigation and discovery, suggesting that he could benefit from additional time.

6

"appropriately assert[]" their speedy-trial rights, as viewed in "light of [their] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). Thus, it is possible for a defendant to insufficiently assert his speedy-trial rights despite "repeatedly mov[ing] for dismissal on speedy trial grounds." *Id.*

That is what occurred here. Laws's first motion for a speedy trial—filed over eight months after his arrest—only generically alleged that the delay had "prejudiced and harmed" him. The motion also insufficiently asserted the right in light of Laws's other conduct. He concurrently signed an "Agreed Setting" form and took other actions suggesting that he was not, in fact, ready for trial. *See Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987) (explaining why a petitioner's speedy-trial motions were not "a sincere effort to obtain a speedy trial"). Laws's second speedy-trial motion demanded only his release and the indictment's dismissal, an improper assertion of speedy-trial rights. *See, e.g.*, *Barker*, 407 U.S. at 534–35; *United States v. Frye (Frye II)*, 489 F.3d 201, 212 (5th Cir. 2007) ("A motion for dismissal is not evidence that the defendant wants to be tried promptly."). Throughout the pretrial proceedings, moreover, Laws signed numerous "Agreed Setting" forms without objection.[5] Because Laws insufficiently and inconsistently asserted his speedy-trial rights, the third *Barker* factor supports the State. *See Goodrum*, 547 F.3d at 259 (observing that this factor hinges on the "frequency and forcefulness" of the "defendant's invocation"); *Parker*, 505 F.3d at 329–30.

Because the first three factors do not heavily support Laws, he must prove that he suffered actual prejudice to prevail on the fourth *Barker* factor. *See Goodrum*, 547 F.3d at 260–61; *Frye II*, 489 F.3d at 212. In analyzing prejudice,

---

[5] Between October 15, 2002, and May 25, 2004, Laws signed ten "Agreed Setting" forms without any record objection. He objected to a reset only twice, and even then did so insufficiently. On May 27, 2003, Laws simultaneously signed an "Agreed Setting" form and moved for a speedy trial and discovery. On November 11, 2003, he objected to a continuance on an "Agreed Setting" form, only to later move for additional investigative resources.

we look to three "interests" that the speedy-trial right "was designed to protect": "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "[T]he most serious [concern] is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Laws concedes that the delay did not impair his defense. Thus, his speedy-trial claim rests entirely on showing that he suffered oppressive pretrial incarceration or anxiety.

Laws does not satisfy that difficult burden. We recognize that a pretrial diagnosis of cancer undeniably caused Laws anxiety, though we note that he received treatment and would have endured that anxiety outside prison. *See Frye II*, 489 F.3d at 213 (citing *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984)). The Supreme Court has suggested that living "under a cloud of suspicion and anxiety" for four years constitutes only "minimal" prejudice absent an effect on a defendant's trial. *Barker*, 407 U.S. at 534. As mentioned above, Laws concedes that he has failed to demonstrate trial-related prejudice.[6]

Balancing the *Barker* factors, we conclude that Laws's speedy-trial claim lacks merit. The delay here was not unusually long,[7] and a good portion of it was

---

[6] Laws's cold-case murder conviction also is "serious" enough to mitigate a showing of non-trial prejudice. *See Barker*, 407 U.S. at 531; *United States v. Bishop*, 629 F.3d 462, 466 (5th Cir. 2010) (noting that a case's complexity concerns the prejudice factor).

[7] *See Loud Hawk*, 474 U.S. at 304–05 (denying speedy-trial relief; 90-month delay); *Barker*, 407 U.S. at 534, 536 (same, four-year delay); *Amos*, 646 F.3d at 203, 209 (same; state court "could easily conclude" 16-month delay did not violate speedy-trial rights); *Bishop*, 629 F.3d at 467–68 (same, at least 22-months delay post-indictment); *United States v. Harris*, 566 F.3d 422, 428, 433 (5th Cir. 2009) (same; three-year delay); *Goodrum*, 547 F.3d at 260, 266 (same, 30-month delay); *Parker*, 505 F.3d 328, 330 (same, 17-month delay); *Frye II*, 489 F.3d at 210, 213 (same, 47-month delay); *United States v. Robinson*, 455 F.3d 602, 607–09 (6th Cir. 2006) (same, 29-month delay); *United States v. Serna-Villareal*, 352 F.3d 225, 232–33 (5th Cir. 2003) (same; 45-month delay); *Millard*, 810 F.2d at 1406–07 (same, 18-month delay); *cf. Doggett*, 505 U.S. 650, 658 (granting speedy-trial relief; 8.5-year delay); *United States v. Molina-Solorio*, 577 F.3d 300, 304, 308 (5th Cir. 2009) (same, almost a 10-year delay).

justified or attributable to Laws. Laws inconsistently and insufficiently asserted his speedy-trial rights and fails to show particularized prejudice sufficient to overcome the first three *Barker* factors. *See Robinson*, 455 F.3d at 608 ("In the absence of particularized trial prejudice, delay attributable to the government's negligence 'has typically been shockingly long' to warrant a finding of prejudice." (quoting *Schreane*, 331 F.3d at 559)).

### III. Ineffective Assistance Claim[8]

Because Laws's speedy-trial claim lacks merit, his ineffective assistance claim necessarily fails. To succeed on an ineffective assistance claim, a defendant must show that counsel was objectively deficient and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Laws could not have suffered prejudice from Duer's failure to brief a nonmeritorious issue. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (To show prejudice, a defendant "must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.").[9]

Even if Laws's speedy-trial claim had more force, the state court nonetheless could have reasonably concluded that briefing it would not have had a substantial probability of altering the outcome on direct appeal. *See*

---

[8] Because the state courts adjudicated this claim on the merits, *Pinholster* mandates that we look only to the state court record, rendering Laws's affidavit evidence immaterial to our analysis. *See* 131 S. Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Relying on *Smith v. Cain*, 708 F.3d 628, 631 (5th Cir. 2013), Laws argues that this record limitation does not bar consideration of his affidavits because the magistrate judge concluded that the state courts unreasonably applied clearly established federal law and granted him an evidentiary hearing. But as the district court never adopted the magistrate judge's conclusions, *Pinholster*—not *Smith*—applies here.

[9] *See Robbins*, 528 U.S. at 286 n.14 ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" (quoting *Strickland*, 466 U.S. at 697)).

*Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision[.]"). That conclusion is especially appropriate because the state court adjudicated Laws's ineffective-assistance claim on the merits, requiring us to review it under the doubly deferential standards of both *Strickland* and AEDPA. In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," it is "whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. Because it was not, we must reject Laws's ineffective assistance claim.

## Conclusion

Laws's speedy-trial claim fails. He therefore could not have been prejudiced by appellate counsel's decision to omit that claim on direct appeal. Accordingly, we AFFIRM the district court's denial of habeas relief.[10]

---

[10] This case does not involve the situation presented in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), because, unlike that case, the ineffective assistance of counsel claim was raised in the state habeas proceeding and, therefore, was not asserted to be procedurally defaulted in federal court.