**UNITED STATES of America,
Appellee,**

v.

**Henry John DOLACK,
Appellant.**

**No. 73–1067.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 11, 1973.

Decided Sept. 14, 1973.

R. Pete Smith, Kansas City, Kan., for appellant.

Bruce E. Miller, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., Edward H. Funston, Thomas A. Hamill, and Glen S. Kelly, Asst. U. S. Attys., with him on the brief), for appellee.

Before LEWIS, Chief Judge, and SETH and HOLLOWAY, Circuit Judges.

SETH, Circuit Judge.

Henry John Dolack appeals from a conviction for having violated 18 U.S.C. § 1201. In the words of the indictment, he was charged as follows:

"On or about October 7, 1970, in the District of Kansas, and within the jurisdiction of this Court, HENRY JOHN DOLACK did unlawfully and knowingly transport in interstate commerce from Kansas City, Missouri, to Kansas City, Kansas, Collette Ranita Lister, a female person, who theretofore had been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted or carried away and held for ransom or reward or otherwise, to wit: sexual gratification, and that the said Collette Ranita Lister was not liberated unharmed in that she was raped, lacerated and bruised by said defendant, in violation of 18 U.S.C. § 1201."

The indictment was returned against Henry John Dolack on October 21, 1970.

At that time, he was serving a two year sentence in a Canadian penal institution on an unrelated charge. He apparently first became aware of the indictment on May 26, 1971, when he was "unofficially" notified of the charge against him by Canadian officials. When he learned of the indictment, he wrote to the Chief Judge of the United States District Court for the District of Kansas that he was so incarcerated and expected to be released on or about May 18, 1972, and that he was a United States citizen "without funds, real or otherwise, to employ counsel; and, there are no interested parties to absorb such costs." He therein petitioned the court to appoint counsel to represent him, to grant counsel travel expenses to confer with Dolack at the Canadian prison, and to grant authority to counsel to employ private investigative assistance to assist in his defense. He further requested that a copy of the charges be sent him. His communication was' filed with the United States District Court on June 3, 1971. The motion was denied with a notation on the court's minute sheet that "Motion denied until such time as deft present in this District," and ."Copy of indictment mailed to Deft on 6/4/71." The accused was returned to Kansas in June 1972 for trial. He was found by the court to be an indigent and counsel was appointed to represent him. When such appointment was made, more than twenty-one months had passed since the indictment was returned, and more than thirteen months had elapsed since he became aware of the charge and petitioned the court for appointment of counsel. The appointed counsel renewed the motion for an order authorizing investigative assistance. pursuant to 18 U.S.C. § 3006A(e)(1). No ex parte hearing was held on this matter, as envisioned by the provisions of section 3006A(e)(1), and the court denied the motion, notwithstanding that the defendant again, on the day of trial, requested such an ex parte hearing on the matter. This request was also denied. The accused specifically stated that the reason such investigative services were required was that the alleged event took place some two years prior to the date of trial and that certain witnesses, whose exact names and whereabouts he did not then know, were necessary for his defense. It should be noted that the defendant was then being held in jail in lieu of a $20,000.00 bond, and could not therefore assist counsel in an investigation of the case.

At the trial, there was a direct conflict of testimony of the accused and the complaining witness, Colette Ranita Lister Hunt. The defendant testified that after stopping to render assistance to Mrs. Hunt, whose automobile had apparently run out of gas, she attempted to rob him at gunpoint. He then was able to disarm her; however, he explained that since he was a convicted felon, he was loathe to turn her over to the local authorities as he had used a firearm in disarming her and apparently was also carrying certain incriminating false identification at the time. He testified that. Mrs. Hunt then offered to have sexual intercourse with him if he would not turn her over to the police. He stated he accepted the offer, engaged in sexual intercourse in his car, and then drove to a motel where he was staying. However, he testified that on the way to his room, Mrs. Hunt suddenly started screaming and fell to the ground. At this juncture, Dolack went to his car and drove off, after encountering a police officer in a patrol car who was responding to the screams.

Mrs. Hunt, on the other hand, testified that she had indeed run out of gas but that the accused pulled up beside her in his car and forced her at gunpoint to get in; they drove from Missouri to Kansas; in Kansas City and still at gunpoint, Dolack forced her to have sexual intercourse with him in the car. They then drove to the motel where she started screaming, fell to the pavement, and the defendant left. Mrs. Hunt testified that she had had a gun, but that it was in her purse which defendant threw into the back seat of the car.

The testimony of the other witnesses at trial appears to corroborate either Dolack's or Mrs. Hunt's testimony, depending upon the light in which their respective versions of the incident are viewed.

The nature of the charge against the defendant is significant, as is the testimony, coupled with the fact that counsel was not appointed until some thirteen months had passed since the time the defendant had initially requested such appointment. Additionally, he was not afforded investigative assistance, and his requests for an ex parte hearing on the matter were refused. As the defendant himself stated to the trial court prior to trial, and as his counsel stated in opposing a protective order as to Mrs. Hunt which was granted as to specific incidents or as bearing on her reputation, the very reason that such investigative aid was sought was to discredit her crucially damaging testimony, and to secure witnesses for this purpose as well as other evidence relating to defendant's testimony.

In the case of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court noted that ". . . it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." Further, the Court stated:

". . . [A]ll of those cases [dealing with the right to counsel] have involved points of time at or after the initation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

.     .     .     .     .     .

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. (Citations omitted)."

Related to the reasons stated in Kirby and of particular significance here is the Sixth Amendment right to a speedy trial, and the reasons therefor. As the Supreme Court has said in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the "most serious" interest which the right to a speedy trial was designed to protect was the defendant's interest in limiting "the possibility that the defense will be impaired." This is so,

". . . [B]ecause the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

.     .     .     .     .     .

". . . Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."

This case, of course, does not directly concern the issue of whether or not the defendant was denied his right to a speedy trial or whether the principles enunciated by the Supreme Court in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), and Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), are applicable where the defendant is incarcerated in a foreign nation. What is before us is

whether the defendant's assertion, after indictment, of his right to counsel, notwithstanding the fact that he was then in a Canadian prison, and the denial of counsel at that time violated his Sixth Amendment rights. We hold that it did. The position taken by the Supreme Court in the Kirby, Dickey, Hooey, and Wingo cases dictates this result. Thus under these decisions, the failure to appoint counsel for defendant soon after the need became apparent, coupled with the fact that no ex parte hearing was held on the matter of investigative assistance (18 U.S.C. § 3006A(e)(1)), while Dolack was in jail awaiting trial requires that this case be reversed.

At this time, a new trial would serve no useful purpose, and we are likewise compelled by the Supreme Court's decision in Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56, 1973, to order the "severe," but "only possible," remedy of dismissal in this case. Accordingly, this case is reversed and remanded to the district court with instructions to dismiss the case and the indictment against Henry John Dolack on which he was here tried.

Reversed.