**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 6, 2012

No. 11-50497

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL CHARLIE SMART,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas
U.S.D.C. No. 3:10-CR-2902-1

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Michael Smart appeals his conviction and sentence under 18 U.S.C. § 111(a)(1) for assaulting a federal officer. Smart raises two issues on appeal: first, he argues that any evidence of his alleged assault should have been suppressed because it was obtained after he was illegally detained; second, he argues that the district court wrongfully denied him the right to self-representation. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50497

## I. Facts and Proceedings

The facts underlying this prosecution took place at the El Paso Port of Entry while Smart was standing in line waiting to re-enter the United States from Mexico. Smart was in a line designated for disabled persons, bicyclists, and people arriving by bus. Roman Loya, a Customs and Border Patrol (CBP) officer, approached Smart to determine whether he belonged in that line. Smart told Loya that he was a disabled veteran and flashed his veterans card in Loya's face while uttering an obscenity. Loya, unable to verify Smart's disabled status from Smart's appearance or the brief glimpse of the veterans card, asked Smart to see the card again. At this point, Smart became hostile, shouted expletives at Loya, and pointed his finger within an inch of Loya's face.

Smart's demeanor was threatening enough to catch the eye of other CBP officers, who immediately placed Smart in an "escort hold," to bring him to a secondary holding area. Thereafter, Smart was detained; ultimately, during this process, Smart became "totally out of control," started yelling in a "high pitched scream," and picked up the bench (to which he was handcuffed) and threw it into a pillar. This incident created a scuffle as officers tried to restrain Smart and gain control of the situation. Smart became more and more agitated, however, and wildly flailed at the officers who attempted to restrain him. CBP officers tried to grab Smart's legs to hold him back, but Smart kicked both officers. Finally, two officers held Smart down and an officer used a taser on Smart, who eventually calmed down and allowed himself to be restrained.

After a criminal complaint was filed against Smart for his post-detainment conduct, a Federal Public Defender was appointed to represent him. That attorney withdrew, and Smart was appointed a new attorney, Luis Islas. Smart nonetheless moved for leave to proceed *pro se*. The district court thereafter held a *Faretta* hearing to determine whether Smart was knowingly and intelligently foregoing his right to counsel. The court agreed to allow Smart to represent

2

No. 11-50497

himself, though it warned him that he would be required to conduct the trial himself and that counsel would only be available in a stand-by role. In other words, Smart was not entitled to hybrid representation. The court also notified Smart that he would not be allowed to use a court computer without an escort. Smart then withdrew his request to proceed *pro se*.

A month later, on the eve of trial, Smart filed another request to represent himself which was neither denominated as a motion nor docketed as such. The district court never addressed this request, and the record does not indicate that it was brought to the court's attention. Five days later, Islas appeared at trial for Smart, announcing his appearance as counsel and making no mention of Smart's request to re-invoke his right to self-representation. Neither Islas nor Smart said anything about this request despite repeated inquiries from the trial court about whether there were any unresolved matters that needed to be addressed before trial commenced. Islas conducted the entire trial and Smart made no attempt to assert his right to represent himself or otherwise bring his request to the judge's attention.

A jury convicted Smart of two counts of assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). He was sentenced below the guidelines range to concurrent 18-month terms of imprisonment and to concurrent three-year periods of supervised release. Smart timely appealed.

## II.  Motion to Suppress

Smart first argues that the district court erred by denying his motion to suppress without holding a hearing or making factual findings on whether his detention was illegal. Smart contends that findings on the illegality of his detention would have allowed him to support his theory that any evidence following his allegedly illegal detention should be suppressed.

"We review the denial of a motion to suppress evidence according to a bifurcated standard: we review findings of fact for clear error and conclusions of

No. 11-50497

law *de novo*." *United States v. Rodriguez*, 564 F.3d 735, 740 (5th Cir. 2009). We may affirm based on any rationale supported by the record. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

Smart alleges that his detention was illegal after he was issued a citation for disorderly conduct which occurred before Smart's final—and most egregious—outburst. The legality of Smart's detention, however, is not relevant to the evidence of which Smart complains. Even if Smart should not have been further detained, he is not free to commit crimes with impunity while so detained. *United States v. Garcia-Jordan*, 860 F.2d 159, 160 (5th Cir. 1988) ("A person who is . . . detained illegally is not immunized from prosecution for crimes committed during his detention period.").

> Committing a crime is far different from making an inculpatory statement, and the treatment we afford the two events differs accordingly. An inculpatory statement usually relates to a previously committed illegal act; there is nothing unlawful about the statement itself. A crime, on the other hand, whether committed by word or deed is by definition an act that violates the law. We exclude inculpatory evidence when it is obtained as a result of an unlawful search or seizure. We have never, however, applied the exclusionary rule as a bar to the prosecution of a crime.

*Id.* (citation omitted); *see also United States v. Melancon*, 662 F.3d 708, 712 (5th Cir. 2011) ("The exclusionary rule does not act as a bar to the prosecution of a crime where the statements themselves are the crime."). Therefore, because evidence of Smart's separate crimes while detained are not subject to exclusion, the district court did not err in denying his motion to suppress.

### III. Right to Self-Representation

Smart next contends that the district court erred by failing to consider and grant his eve-of-trial request to proceed *pro se*. He claims that he clearly and unequivocally asserted his desire to forego representation before his trial, and

4

No. 11-50497

that the district court's failure to address his request constitutes reversible error.  For the reasons that follow, we disagree.

Defendants have a constitutional right to represent themselves in federal court.  *Burton v. Collins*, 937 F.2d 131, 133 (5th cir. 1991) (citing *Faretta v. California*, 422 U.S. 806, 815-21 (1975)).  We review *de novo* Smart's attempted invocation of the right to self-representation.  *United States v. Cano*, 519 F.3d 512, 515-16 (5th Cir. 2008).  Erroneous denial of the right to proceed *pro se* is not subject to harmless error review; instead, such error requires automatic reversal. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).

Assertion of the right to represent oneself is a two-step process.  First, the defendant must clearly and unequivocally inform the court of his desire to represent himself.  *Cano*, 519 F.3d at 516.  Second, the court must determine, through a *Faretta* hearing, whether the defendant is "knowingly and intelligently" forgoing the right to counsel.  *Id.*  Notwithstanding this process, a defendant may waive his right to represent himself.  *See, e.g.*, *McKaskle*, 465 U.S. at 182; *Cano*, 519 F.3d at 516; *see also Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982).  Assuming without deciding that Smart's March 2 written request was a "clear and unequivocal request" to represent himself, we conclude that Smart abandoned this request by his subsequent conduct.

A defendant may waive his right to self-representation when he requests to act *pro se*, but later vacillates in that request or acquiesces to representation, thus indicating to the court "that defendant has abandoned his initial request to represent himself." *See, e.g.*, *Brown*, 665 F.2d at 611; *McKaskle*, 465 U.S. at 183 ("Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.").

No. 11-50497

Smart's claim attributes the deprivation of his right to self-representation to the trial court's failure to conduct a second *Faretta* hearing pursuant to his March 2, 2011, letter to the court. The Government contends that Smart waived his request to proceed *pro se* by failing to notify the district court at the start of his trial that it had not yet ruled on his request.

While it is true that a defendant is generally not required to re-affirm a clear and unequivocal assertion of his right of self-representation, this principle hinges on the fact that a defendant need not make repeated "fruitless" requests to the trial court simply to avoid abandoning his rights. For example, a defendant is not expected to re-invoke his right to self-representation after the trial court categorically denies his request. *See, e.g., Cano*, 519 F.3d at 516; *Williams v. Bartlett*, 44 F.3d 95, 101 (2d Cir. 1994); *United States v. Arlt*, 41 F.3d 516, 523-24 (9th Cir. 1994).

Here, however, we do not have a district court refusing to rule or deliberately ignoring a request. *Cf. United States v. Ramirez-Perez*, 132 F. App'x 558, 559 (5th Cir. 2005) (unpublished)[1] (concluding that the trial court erred in failing to rule on defendant's request to proceed *pro se* when the trial court was expressly on notice of the request and simply ignored it). There is nothing in this record showing that the district court was actually on notice of Smart's request.[2] A defendant's obligation to assert his constitutional rights is undoubtedly greater when there is no indication that the trial court has even

---

[1] Cited in *Cano* to indicate, despite its unpublished nature, the "general tenor of our jurisprudence." 519 F.3d at 516.

[2] As indicated above, Smart did not file a motion to proceed *pro se*, but merely docketed a letter with the court. Federal Rule of Criminal Procedure 47 requires any "party applying to the court for an order [to] do so by motion." *See also* W.D. TEX., RULE CR-47 (requiring a motion accompanied by a proposed order). These procedures are not ceremonial: they serve to apprise the court of important business that needs attending. When a defendant such as Smart fails to properly notify the court of his request, he can hardly complain that it was not addressed or noted.

No. 11-50497

considered the request. Our district courts are extremely busy and face an abundance of pre-trial filings that are not automatically or routinely reviewed by district judges. Smart's request to proceed *pro se* was not entered as a motion and was sent just days before trial. The record contains no indication that the district judge was ever notified of Smart's request.

Smart knew how to file a motion (denominated as such) to represent himself because he properly moved the court to conduct a *Faretta* hearing just over a month before he sent the letter in question. In that instance, the district court properly responded to Smart's first request, conducting a *Faretta*-compliant colloquy, and advising Smart of the consequences of waiving his right to counsel. There is no indication that the district court simply ignored Smart's second request. To the contrary, the judge repeatedly inquired whether there were other matters that needed to be addressed before bringing in a jury panel for voir dire.[3] Smart stood silently by, never mentioning the pending request and acquiescing in his counsel's statement that he was there representing Smart. Where there is no indication that the trial court is aware of a request, a defendant may not sit in silence when the court asks if there are any issues that need to be taken up before trial, then move forward without objection as his counsel conducts the entire defense.[4] *See United States v. Blyden*, 210 F. App'x

---

[3] The judge asked: "Anything else we need to take up before we bring in the panel?" Smart said nothing in return, and Islas did not bring up Smart's request. Islas then represented Smart through the entirety of the trial with no objection from Smart, or any indication that Smart was dissatisfied with his counsel.

[4] We do not depart from our discussion in *Batchelor v. Cain*, 682 F.3d 400, 412 (5th Cir. 2012), that highlighted the trial court's duty to conduct a *Faretta* hearing in the face of a clear and unequivocal request by the defendant. In that habeas case, we rejected the State's argument that Batchelor abandoned his request by failing to reaffirm his desire to represent himself in open court. *Id.* In contrast to the facts here, however, the trial court in *Batchelor* expressly discussed with defense counsel the defendant's request to proceed *pro se*, and only at the end of the discussion was Batchelor invited to speak on his own behalf. *Id.* at 411.

We reiterate here that a defendant need not, at the risk of abandonment, reinvoke his request to represent himself where the trial court is clearly apprised of his request and has

928, 930 (11th Cir. 2006) (unpublished) (concluding that a defendant's acceptance of representation when the court ignored his request to proceed *pro se* constituted abandonment); *Wilson v. Walker*, 204 F.3d 33, 37-38 (2d Cir. 2000) (finding abandonment where the trial court had not yet ruled on the *pro se* request, but held two hearings on the issue and the defendant never re-affirmed his desire to represent himself or expressed any dissatisfaction with his counsel's performance).

Smart's failure to respond to the court's inquiry is not the only instance of abandonment. His counsel filed documents with the court just two days after Smart filed his request. This included an "Exhibit List" and "Defendant's Witness List." Additionally, Islas represented to the court that he was acting as Smart's attorney. *Cf. Brown*, 665 F.2d at 612 ("The general rule is that a court may accept counsel's representations and the defendant is bound thereby, except upon a showing of counsel's bad faith or gross negligence."). Though silence alone does not constitute waiver, silence in the face of contradictory intent to be represented by counsel generally indicates abandonment of the request to proceed *pro se*. *See id.* at 611-12; *see also United States v. Long*, 597 F.3d 720, 728 (5th Cir. 2010) (holding that defendant waived his right to self-representation where he "told the trial judge before trial that he did *not* want to represent himself," and the public defender acted as counsel for the remainder of trial without objection); *United States v. Montgomery*, 529 F.2d 1404, 1406 (10th Cir. 1976) (cited approvingly in *Brown*, 665 F.2d at 611, for the proposition that a defendant waives "his right when after requesting permission to represent himself, he allow[s] appointed counsel to plea bargain on his behalf and accept[s] the terms of the bargain"). Under these circumstances, we conclude that Smart

---

either ruled or refused to rule. That does not, however, resolve the dispute before us, as Smart had no indication that the court had considered his motion and had the clear opportunity to notify the court of his desire for it to do so.

abandoned his request to proceed *pro se* and acquiesced to his attorney moving forward with the case. *See id.* at 611.[5]

We do not imply "that a trial court may unduly defer a ruling on a firm request by defendant to represent himself in the hopes the defendant may change his mind." *Id.* at 612. Rather, these circumstances illuminate the scenario where there is no indication that the trial court was apprised of Smart's second request, Smart was silent in response to the court's direct inquiries, and counsel made repeated actions on Smart's behalf, with no objection, or indication of continued intent to proceed *pro se*, from Smart.

For the foregoing reasons, we AFFIRM.

---

[5] Smart also knew that he was not entitled to hybrid representation because that request had already been denied after Smart's initial motion to proceed *pro se*.