# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-20187

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2014

Lyle W. Cayce
Clerk

MATTHEW JAMES LEACHMAN,

Petitioner-Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-212

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:*

Matthew James Leachman ("Leachman"), Texas prisoner # 903617, filed
a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his
state-court conviction for aggravated sexual assault of a child. The district
court denied Leachman's § 2254 petition and dismissed the case with prejudice.
The district court also denied Leachman a certificate of appealability ("COA").
Leachman filed a timely notice of appeal. On appeal, we granted Leachman a
COA on three issues: (1) whether his claim that he was denied the right to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-20187

represent himself is procedurally barred, (2) whether he was denied the right to counsel at a critical stage of the proceedings, and (3) whether he was denied his right to a speedy trial. Order, 1-2. We address each of these claims in turn. For the reasons set forth below, we affirm in part and vacate and remand in part.

## I. Standard of Review

When reviewing requests for federal habeas relief, we review the district court's findings of fact for clear error and its conclusions of law de novo, "applying the same standards to the state court's decision as did the district court." *Salts v. Epps*, 676 F.3d 468, 473 (5th Cir. 2012) (internal quotation marks omitted).

With respect to claims adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act ("AEDPA") requires a federal habeas court to defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Purely legal conclusions are reviewed under the "contrary to" clause of § 2254(d)(1), and mixed conclusions of law and fact are reviewed under the "unreasonable application" clause. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The standards are "difficult to meet" and demand "that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted). "The petitioner carries the burden of proof." *Id.*

The Supreme Court has articulated the extent of deference owed under § 2254(d): "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being

No. 12-20187

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786–87 (2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. Furthermore, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks and citation omitted). A federal habeas court's review focuses on the state habeas court's ultimate legal conclusion and not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). The state court's factual findings are "presumed to be correct" and must be rebutted by "clear and convincing evidence." § 2254(e)(1).

With respect to claims deemed procedurally barred in state court pursuant to an independent and adequate state procedural rule, a federal habeas court is barred from reviewing the claims unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## II. Analysis

### A. Right to Self-Representation

Leachman argues first that he was denied his right to self-representation. Leachman alleges that he filed a motion to represent himself with the state trial court, that the court denied the motion, and that he received a "Memorandum Response" from the clerk's office notifying him of the judge's denial of his motion. He alleges further that when he discovered that neither the court's ruling nor the memorandum appeared in the clerk's record, he wrote

3

No. 12-20187

letters to and called the clerk's office to request that the clerk supplement the record and filed a motion in the state court of appeals to correct the record. Subsequently, in the hearing on Leachman's motion for a new trial—where he appeared *pro se* and before a different judge—Leachman questioned his trial counsel, Brian Coyne, about Coyne's recollection of the case. Coyne testified that he remembered that Leachman filed a motion to represent himself at trial, that he thought that the court granted the motion and that Leachman later decided not to represent himself, but that he did not have a good memory of the case. *Id.* The court then stated: "For purposes of the record, I'll have the clerk look through the file to see if there was such a motion, whether or not Judge Voitt ruled on it and we will include that in the record of this transcript." *Id.* at 32. The trial court then allowed Leachman to introduce in evidence "Defendant's Ex Parte motion to Vacate the Appointment of Counsel and to Recognize the Defendant as Self-Represented." *Id.* at 33. Leachman's copy of the motion reflects that it was denied. *Id.* at 34. The copy of the motion in the clerk's record reflects that the motion was filed but not that it was denied. Additionally, the copy of the motion in the state habeas record reflects that the motion was denied on June 17, 1997. The state habeas record also contains a copy of a letter from the district clerk to Leachman indicating that the motion was denied on June 17, 1997.

On direct review, the Texas Court of Appeals rejected Leachman's self-representation claim based on the Texas contemporaneous-objection rule. *Leachman v. State*, No. 01-98-01255-CR, 2006 WL 2381441, at *3 (Tex. App. Aug. 17, 2006) (unpublished). The court first noted that "[i]n [Leachman's] motion, [he] sought permission from the trial court to proceed *pro se*—nothing less." However, the court then explained:

> The clerk's record does not contain an order from the trial court denying appellant's request to proceed *pro se*. The abatement

record, however, reflects that, during the motion for new trial hearing, appellant questioned his trial counsel, Brian Coyne, and asked if he remembered when the trial court denied appellant's motion to vacate appointment of counsel. Coyne did not recall the trial court's ruling, and appellant produced correspondence from the district clerk indicating that, on June 17, 1997, the trial court denied appellant's motion to vacate appointment of counsel. The district clerk's letter was attached as an exhibit to the motion for new trial hearing.

Appellant relies on the district clerk's letter as proof that the motion was presented to and denied by the trial court. The clerk's letter, however, is not a part of the clerk's record filed in this appeal. It is not dated and or authenticated in any way. As such, it does not constitute evidence of an appealable order. The record also does not contain a docket entry by the trial court reflecting a ruling on the motion. *See Flores v. State*, 888 S.W.2d 193, 195 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (holding that a signed docket entry evidences trial court's ruling on motion to suppress evidence). Because the record does not support appellant's contention that his motion to represent himself was presented to the trial court and was denied, we hold that appellant has not properly preserved this point of error. *See* TEX.R.APP. P. 33.1. We overrule point of error two.

*Id.*

The Texas Court of Criminal Appeals ("TCCA") refused Leachman's petition for discretionary review, *id.* at caption, and the U.S. Supreme Court denied certiorari, *Leachman v. Texas*, 554 U.S. 932 (2008). Subsequently, the state habeas trial court found Leachman's self-representation claim procedurally barred because it had been raised and rejected on direct appeal. Specifically, under "Conclusions of Law," the court stated: "Applicant is procedurally barred from complaining of the trial court's denial of his request to proceed *pro se* as it was raised in his direct appeal and rejected." The TCCA then denied Leachman's habeas petition without written order. *Id.* at cover.

The standard of review for this claim is in dispute. This threshold question turns on whether Leachman's self-representation claim was

No. 12-20187

adjudicated on the merits or deemed procedurally barred in state court. The issue is whether the TCCA, in its denial without written order of Leachman's habeas petition, applied a procedural bar—and if so, which one—or adjudicated the claim on the merits.

In *Richter*, 131 S. Ct. at 784–85, the Supreme Court held that when a federal claim was presented to a state court and the state court denied relief in an order unaccompanied by an opinion explaining its reasoning, a federal court may presume that the state court adjudicated the claim on the merits "in the absence of any indication or state-law procedural principles to the contrary." That presumption, however, "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). In *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013), the Court strengthened and extended this presumption to state-court opinions that addressed some but not all of a defendant's claims. The Court stated: "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court *must* presume that the federal claim was adjudicated on the merits." *Id.* at 1096 (emphasis added). However, the "presumption can in some limited circumstances be rebutted . . . either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*) or by the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted). . . . Thus, while the *Richter* presumption is a strong one that may be rebutted only in unusual circumstances, it is not irrebuttable." *Id.*

The Court's citation to *Ylst* is instructive. In *Ylst*, 501 U.S. at 803, the Court explained that where a reasoned state judgment explicitly imposes a procedural default, a federal court will presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same

6

ground." The Court thus "looked through" subsequent state habeas court denials to the decision of the state court on direct review to find that a procedural bar applied. *Id.* at 805–06. The Court then noted:

> The only common circumstance in which the presumption is unrealistic is that in which the later state decision rests upon a prohibition against further state review—for example, an unexplained denial of state habeas resting in fact upon a rule . . . preventing the relitigation on state habeas of claims raised on direct appeal. In that circumstance, even though the presumption does not posit the real reason for the later denial, it does produce a result ("looking through" to the last reasoned decision) that is the correct one for federal habeas courts. Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil-which is precisely the effect accorded by the "look-through" presumption.

*Id.* at 804 n.3. In *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013), we looked through a state habeas decision that found that the petitioner's arguments had been "previously considered and rejected" on direct appeal and found that "in light of th[at] determination" we would "examine the last clear state court decision of any substance."

Similarly here, the state habeas trial court found that Leachman's self-representation claim had been raised and rejected on direct appeal. Thus, that decision was "a later state decision based upon ineligibility for further state review," and it "neither rest[ed] upon procedural default nor lift[ed] a pre-existing procedural default." *See Ylst*, 501 U.S. at 804 & n.3; *Divers*, 69 F.3d at 216. The look-through presumption is especially appropriate here, where all of the state-court opinions relied on procedural grounds and none purported to consider the merits. *See Ylst*, 501 U.S. at 802-03; *Landry v. Cain*, 445 F. App'x 817, 821–822 (5th Cir. 2011) (unpublished) (concluding that state-court record was "unambiguous" that claim was denied on procedural grounds where court

No. 12-20187

"orally stated that habeas relief was being denied because every ground 'either was or could have been' addressed in [the] direct appeal and, the court's disposition of [the] petition involved no discussion of the merits"); *Steward v. Cain*, 259 F.3d 374, 377–78 (5th Cir. 2001) (looking through an opinion that was reasoned as to some claims but not as to the claim that the lower court had found procedurally barred). We therefore hold that Texas has rebutted the presumption that the TCCA's denial was a ruling on the merits and we look through to the last-reasoned state decision. That decision is the decision of the Texas Court of Appeals on direct appeal, which applied the contemporaneous-objection rule, TEX.R.APP. P. 33.1, to find that Leachman's self-representation claim was procedurally defaulted. *Leachman*, 2006 WL 2381441, at *3.

"We have recognized a federal petitioner's failure to comply with the Texas contemporaneous objection rule as an adequate and independent state procedural bar to federal habeas review." *See Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007). Therefore, Leachman must show cause for the default on his self-representation claim and actual prejudice from the alleged constitutional violation. *See Coleman*, 501 U.S. at 750 (1991).[1]

### 1. Cause

In evaluating cause and prejudice, "[w]here a district court fails to make necessary findings, a remand for entry of such findings is the usual recourse for an appellate court; however, where all of the issues on appeal may be fairly resolved from the record presented, a remand may not be required." *Barrientes*

---

[1] Leachman argues in the alternative that under *Lee v. Kemna*, 534 U.S. 362, 378 (2002), his case is extraordinary based on its unique facts, and therefore no procedural bar should apply. Leachman did not raise that argument in the district court, hence we do not consider it here. *See Pierce v. Thaler*, 604 F.3d 197, 215 (5th Cir. 2010) ("[A] contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief.") (internal quotation marks and citation omitted).

No. 12-20187

*v. Johnson*, 221 F.3d 741, 763 (5th Cir. 2000) (internal quotation marks and citation omitted). In addressing cause, the district court stated that "Leachman argues, essentially, that his default should be excused because he is a *pro se* litigant who is untrained in the law. It is well established, however, that *pro se* status is insufficient to demonstrate cause and does not excuse procedural default." The district court misapprehended Leachman's argument, which is that he has shown cause because the state clerk failed, at several points, to file in the record documentation of the trial court's ruling on Leachman's self-representation motion, despite Leachman's repeated attempts to correct that failure.

To show cause, Leachman "must establish that an external factor objectively impeded his ability to comply with Texas's procedural rule." *Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008). Leachman argues that it was the missing record evidence that prevented him from complying with the contemporaneous-objection rule. He argues further that the fact that a copy of the filed motion did appear in the clerk's record shows that the judge must have ruled on it. Furthermore, Leachman requested that the record be supplemented with evidence of the court's denial. Finally, in the hearing on Leachman's motion for a new trial, the court stated that it would have the clerk look for the motion and allowed Leachman to introduce a copy of the motion that reflected that it was denied. The state habeas record similarly reflects that the motion was denied. Therefore, it is only the copy in the clerk's record that does not reflect that Leachman's motion was denied.

Courts have found cause in similar instances of potential clerical error. *See Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007) (finding that petitioner established cause for failure to timely file order where court docket showed copy of order was sent only to petitioner, not to his attorney, and where affidavit showed that no legal mail for petitioner was received by prison);

9

No. 12-20187

*Johnson v. Champion*, 288 F.3d 1215, 1227–28 (10th Cir. 2002) (finding that petitioner established cause for failure timely to file where clerk failed to provide petitioner with copy of order and to transmit record to appeals court); *Roberts v. Sutton*, 217 F.3d 1337, 1340 (11th Cir. 2000) (finding that petitioner established cause for insufficient record where part of record was not before court of appeals, despite the fact that it had been certified as completed and transmitted by clerk, perhaps due to clerical error).

Because the district court did not address or make findings on Leachman's cause argument, properly construed, and because Texas has never answered Leachman's argument about the documents reflecting the state court's ruling on his self-representation motion, we remand for the district court to determine whether Leachman has shown cause. *See Barrientes*, 221 F.3d 763, 768–69.[2]

## 2. Prejudice

To show actual prejudice, Leachman "must establish not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Moore*, 534 F.3d at 463 (internal quotation marks and citation omitted). Leachman argues that he unequivocally informed the state trial court of his desire to represent himself and that the court summarily denied his request in violation of the Sixth Amendment. *See Faretta v. California*, 422 U.S. 806, 835 (1975); *Miller v. Thaler*, 714 F.3d 897, 903 (5th

---

[2] In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011), the Supreme Court held that "[i]f a claim has been adjudicated *on the merits* by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." (emphasis added); *see also Higgins v. Cain*, 720 F.3d 255, 262–63 (5th Cir. 2013) (holding that *Pinholster* does not preclude federal court's consideration of evidence to the extent that "it merely reconstruct[s] facts [known] to the state trial court"). Because we hold that Leachman's self-representation claim was not adjudicated on the merits by a state court, the *Pinholster* rule does not apply. *See Pinholster*, 131 S. Ct. at 1398, 1401.

No. 12-20187

Cir. 2013); *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008). The Texas Court of Appeals found that "[i]n [Leachman's] motion, [he] sought permission from the trial court to proceed *pro se*—nothing less." *Leachman*, 2006 WL 2381441 at *3. Leachman argues further that where a trial court commits a *Faretta* error by preventing a defendant from proceeding *pro se*, that error is structural and thus inherently prejudicial. *See Arizona v. Fulminante*, 499 U.S. 279 (1991); *see also McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984); *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012); *Cano*, 519 F.3d at 516; *United States v. Virgil*, 444 F.3d 447, 455 n.9 (5th Cir. 2006).

Texas argues that Leachman waived his right to self-representation by abandoning his initial request to represent himself when he subsequently filed a motion for hybrid representation, which the trial court granted. In that motion, Leachman requested permission to argue a motion to quash. Coyne, Leachman's counsel, noted that Leachman was "not asking for true hybrid representation, he's only asking that he be allowed to argue this motion to quash at the conclusion of [counsel's] development of the evidence and [counsel's] development of the testimony." Coyne stated that Leachman would not make objections or otherwise participate in his defense. Leachman argues that his motion for hybrid representation was "nothing more than [his] willingness to take whatever measures the trial court was willing to allow." *See Batchelor*, 682 F.3d at 412; *Cano*, 519 F.3d at 516–17.

A defendant may waive his right to self-representation through subsequent conduct that indicates he has abandoned his request. *See, e.g., McKaskle*, 465 U.S. at 182–83; *Cano*, 519 F.3d at 516. Thus, a defendant may waive this right when he requests to act *pro se* but later vacillates in that request or acquiesces to representation. *See Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982). However, a defendant is not expected to reinvoke his right to self-representation after the court summarily denies his request. *See*

11

No. 12-20187

*Batchelor*, 682 F.3d at 412; *Cano*, 519 F.3d at 516–17. "While it is true that a defendant is generally not required to re-affirm a clear and unequivocal assertion of his right of self-representation, this principle hinges on the fact that a defendant need not make repeated 'fruitless' requests to the trial court simply to avoid abandoning his rights." *United States v. Smart*, 488 F. App'x 790, 793 (5th Cir. 2012) (unpublished). We leave to the district court to determine whether Leachman has established prejudice,[3] should Leachman establish cause for his default.

Accordingly, we vacate and remand Leachman's self-representation claim. *See Barrientes*, 221 F.3d at 769.

### B. Right to Counsel

Leachman argues second that he was denied his Sixth Amendment right to counsel after he was formally charged and indicted in Texas but while he was still in custody in Pennsylvania, having been transferred there to answer a federal indictment. On March 13, 1996, Leachman was arrested on a federal charge of possession of child pornography and transferred to custody in Pennsylvania. *Leachman*, 2006 WL 2381441, at *2. On April 15, 1996, the State of Texas filed seven charges against Leachman, including, in Harris

---

[3] To the extent that, in evaluating prejudice, the district court relied on Leachman's trial counsel's testimony that he thought he remembered that Leachman's motion was *granted* but that Leachman later decided not to represent himself, that testimony is not borne out by the record, which, as explained above, indicates that the motion was denied. Neither party contends that the motion was ever granted. We note that case law establishes that a defendant need not continuously repeat his request to represent himself after the court summarily denies his initial request. *See Brown*, 665 F.2d at 611 (concluding that defendant waived his right to represent himself when he subsequently asked counsel to continue before his initial request to proceed *pro se* was denied); *Batchelor*, 682 F.3d at 412 (reiterating that a defendant is "not required, in order to avoid waiver, to add anything to the straightforward request that he had already made plain in writing"); *Cano*, 519 F.3d at 516–17 (concluding that defendant who unequivocally requested to represent himself did not waive his right through subsequent conduct where court summarily denied request and defendant allowed counsel to represent him and did not renew motion).

County, the aggravated sexual assault charge. *Leachman*, 2006 WL 2381441, at \*2. In response to his state charges, Leachman sent a letter and affidavit of indigence to Texas trial court requesting appointment of counsel. *Leachman*, 2006 WL 2381441, at \*2. Leachman states that the trial court denied his request without a formal hearing. *Leachman*, 2006 WL 2381441, at \*2. On July 3, 1996, a grand jury indicted Leachman in Texas court, after which Leachman sent another letter and affidavit of indigence requesting appointment of counsel. *Leachman*, 2006 WL 2381441, at \*2. The trial judge again denied the request, and instead counsel was appointed upon Leachman's first appearance in state court on March 14, 1997. The Texas courts took no other action on the Harris County case until Leachman returned from Pennsylvania. *Leachman*, 2006 WL 2381441, at \*2.

"The Sixth Amendment right of the accused to assistance of counsel in all criminal prosecutions is limited by its terms: it does not attach until a prosecution is commenced. We have, for purposes of the right to counsel, pegged commencement to the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 198 (2008) (internal quotation marks and citations omitted). The inquiry is a functional one: "The rule is not mere formalism, but a recognition of the point at which the government has committed itself to prosecute, the adverse positions of government and defendant have solidified, and the accused finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Id.* (internal quotation marks and citations omitted).

"[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778,

786 (2009). For Sixth Amendment purposes, the attachment of the right to counsel (at the initiation of the adversary process) is distinct from the right to have counsel present (at a critical stage). It is "an analytical mistake" to "assum[e] that attachment necessarily requires the occurrence or imminence of a critical stage." *Rothgery*, 554 U.S. at 212. Thus, not every event following attachment constitutes per se a critical stage. Rather, "what makes a stage critical is what shows the need for counsel's presence." *Rothgery*, 554 U.S. at 212; *see also United States v. Ash*, 413 U.S. 300 (1973).

On direct review, the state appellate court found that this claim was without merit, reasoning that not every event following the inception of adversary judicial proceedings is a critical stage, that a pretrial proceeding is critical only if the accused requires aid in coping with legal problems or assistance in meeting his adversary, and that because there were no proceedings until Leachman returned to Texas, Leachman was not deprived of counsel. *Leachman*, 2006 WL 2381441 at *3. Thereafter, on federal habeas review, the district court found that "[a]lthough some of Leachman's *pro se* motions were summarily dismissed by the trial court, there were no proceedings of an adversarial nature conducted in any of Leachman's state court cases until March 14, 1997, when he appeared in court with his appointed counsel." The district court found further that Leachman "does not allege facts showing that he was denied counsel . . . during the critical stage of an adversarial proceeding," and "[t]he record does not establish otherwise."

Leachman argues "that the absence of any counsel in Texas to negotiate a plea bargain was a per se denial of counsel at a critical stage." This urges a rule, however, not clearly established by Supreme Court precedent, hence not open to relief under AEDPA. Even assuming that Supreme Court precedent establishes that formal charges trigger attachment, the Court has not held that the *opportunity* to plea bargain constitutes a critical phase. Although the Court

14

No. 12-20187

stated in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), and *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), that the *negotiation* of a plea bargain is a critical phase, those cases did not establish the proposition that a state court is required to appoint counsel so that a defendant may initiate plea bargaining with the state. *Padilla* addressed whether counsel's performance was deficient because he failed to inform his client, during an ongoing plea-bargaining process, of deportation consequences, 559 U.S. at 366–75, and *Lafler* addressed whether counsel's performance was deficient during ongoing plea bargaining when he advised his client to reject a government plea offer. 132 S. Ct. at 1383–91.

Leachman points to no evidence that Texas had extended, or was interested in entering into, a plea agreement with him. Indeed, the state record contains Leachman's own affidavit statement that his trial counsel had informed him that receiving a speedy trial should not be a problem because the state wanted to go to trial and would *not* plea bargain. Correspondingly, Leachman's affidavit asserts: "I responded that I didn't want to plea bargain anyway and wanted the earliest trial date possible." Regardless, Leachman was appointed counsel as soon as he returned to Texas, upon his first appearance in state court and before his trial. Thus, Leachman had full opportunity to initiate and enter into plea-bargaining discussions with the state with appointed counsel.

The district court accurately observed that no events that clearly constituted critical stages in the Texas case occurred while Leachman was in Pennsylvania. *See United States v. Gouveia*, 467 U.S. 180, 188 (1984) ("Although we have extended an accused's right to counsel to certain critical pretrial proceedings, we have done so recognizing that at those proceedings, the accused is confronted, just as at trial, by the procedural system, or by his expert adversary, or by both, in a situation where the results of the

confrontation might well settle the accused's fate and reduce the trial itself to a mere formality.") (internal quotation marks and citations omitted); *Burdine v. Johnson*, 262 F.3d 336, 347 (5th Cir. 2001) (en banc) ("To justify a particular stage as critical . . . the Court has looked to whether the substantial rights of a defendant may be affected during that type of proceeding.") (internal quotation marks and citations omitted). The Supreme Court has not held that the time after the filing of formal charges in one jurisdiction, when a defendant is in another jurisdiction and when no court proceedings have occurred or are occurring in the former jurisdiction, is a critical phase.

Nor has the Supreme Court held that speedy-trial concerns determinatively bear on the denial-of-counsel inquiry, or that a defendant suffers an independent violation of the right to counsel because he requests appointment of counsel not given to him until his arrival to answer pending state charges. Leachman's reliance on *Maine v. Moulton*, 474 U.S. 159, 161 (1985), is unavailing. There, the Court found a violation of the defendant's right to counsel because the state interfered with the attorney-client relationship *after* the defendant had already retained counsel. *Id.* at 176–77.[4]

Leachman has not established that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing Supreme Court law beyond any possibility for

---

[4] Leachman relies on *United States v. Dolack*, 484 F.2d 528 (10th Cir. 1973), where the Tenth Circuit held, on direct review of a federal conviction, that the defendant's right to counsel was violated when the district court denied the defendant's motion for appointment of counsel while the defendant was in a Canadian penal institution. *Id.* at 530–31. The court reasoned that the charges against the defendant were significant, that counsel was not appointed until thirteen months after the defendant's initial request, and that, in denying the defendant's motion to appoint counsel, the district court also denied the defendant's request for investigative assistance. *Id.* at 530. Although the rationale of *Dolack* may have persuasive force given its unique federal and overseas circumstances, for purposes of AEDPA, "clearly established law . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004).

No. 12-20187

fairminded disagreement. Accordingly, we affirm the district court's dismissal of Leachman's right-to-counsel claim.

### C. Right to a Speedy Trial

Leachman argues third that he was denied his Sixth Amendment right to a speedy trial. During trial, the state trial court held a hearing on Leachman's *pro se* speedy-trial motion and denied it. In denying the motion, the court made findings on the merits, which are entitled to AEDPA deference. *See* 28 U.S.C. § 2254(e)(1). The court acknowledged that the better practice would have been to appoint counsel for Leachman while he was incarcerated in Pennsylvania; it opined, however, that Leachman was promptly transported to Texas when the Pennsylvania proceedings were over and that counsel was appointed for him immediately when he arrived in Texas and appeared in court. Furthermore, Leachman had an opportunity to discuss his case with counsel, and the case was ready for trial "much earlier." Trial was delayed by "a series of resets, and in spite of the fact that he stated he didn't want them, [the court was] taking it that . . . they were agreed to." Furthermore, the court found that Leachman's complaint that the prison conditions were poor was not a reason to dismiss the case. The court found the argument that Leachman was prejudiced because he had forgotten the names and addresses of witnesses to be disingenuous because Leachman had that information available to him and could have taken notes. Finally, Leachman asked for a continuance when trial began; thus "any prejudice which might have occurred" was "not enough to . . . justify dismissing" the case. The court noted that from what it had seen and heard at trial, "setting aside the possibility that there might be some witnesses that he says he's forgotten," it did not see any prejudice to Leachman.

Leachman thereafter raised his speedy-trial claim in his state habeas petition. The state habeas trial court rejected Leachman's claim on three

17

No. 12-20187

separate bases: (1) it was not cognizable in a habeas petition; (2) counsel did not file a speedy-trial motion in the trial court; and (3) Leachman did not raise the speedy-trial issue on direct appeal.

On federal habeas review, because the state did not argue that this claim was procedurally barred and instead addressed the merits, the district court addressed the merits instead of relying on the procedural bar. *See Amos v. Thornton*, 646 F.3d 199, 204 n.4 (5th Cir. 2011) (citing *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006)). The district court found (1) that the delay of at least two years from the time Leachman was charged until the time of his trial did not weigh in Leachman's favor because it was less than the presumptively prejudicial five-year delay; (2) that the reason for the delay did not weigh in Leachman's favor because Leachman failed to show unreasonable prosecutorial or governmental decisions deliberately designed to harm him, and because the trial was delayed by resets that Leachman agreed to or requested; (3) that Leachman did not diligently assert his right because the record reflected that he did not file a motion to dismiss for want of a speedy trial until after trial began; and (4) that the record did not reflect that Leachman's ability to put on a defense was prejudiced by fading memories.

Preliminarily, we note that the state habeas trial court correctly observed that Leachman did not raise his speedy-trial claim on direct appeal. Although Texas does not rest its argument before us on that procedural bar, we may raise this impediment *sua sponte. See Scott v. Johnson*, 227 F.3d 260, 262–63 (5th Cir. 2000). However, Texas did not raise the procedural bar in district court either. In an abundance of caution, we proceed, as did the district court, to assess the merits of Leachman's claim. *See id.*

The Sixth Amendment guarantees a defendant "the right to a speedy and public trial." U.S. CONST. AMEND. VI. The right to a speedy trial applies to the states via incorporation by the Due Process Clause of the Fourteenth

18

Amendment. *Divers*, 698 F.3d at 215. We evaluate Leachman's speedy-trial claim under the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. "This four-factor balancing test eschews rigid rules and mechanical factor-counting in favor of a difficult and sensitive balancing process. Section 2254(d)(1) thus requires us to give the widest latitude to a state court's conduct of its speedy-trial analysis." *Amos*, 646 F.3d at 205 (5th Cir. 2011). Moreover, "the deference due under § 2254(d)(1) is not diminished by the fact that the [state court] did not explain the reasons for its determination that [the petitioner's] claim is without merit. . . . If there is an objectively reasonable basis on which the state court could have denied relief, AEDPA demands that we respect its decision to do so." *Id.* Finally, this court "may affirm the denial of habeas relief on any ground supported by the record." *Id.* at 203 n.4 (quoting *Scott*, 227 F.3d at 262).

## 1. Length of Delay

Under the first *Barker* factor, but applying, as AEDPA requires, state court findings of fact not rebutted by clear and convincing evidence, we ask whether the delay is extensive enough to trigger examination of the remaining factors. *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) (citing *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). "The bare minimum required to trigger a *Barker* analysis is one year." *Amos*, 646 F.3d at 206. If that threshold is met, we examine the extent to which the delay extends beyond the minimum because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Goodrum*, 547 F.3d at 258 (internal quotation marks and citation omitted).

"A defendant's speedy-trial right attaches at the time of arrest or indictment, whichever comes first." *Amos*, 646 F.3d at 206 (internal quotation

No. 12-20187

marks and citation omitted). Leachman argues that the length of his pretrial delay should be calculated as of the time that the state issued a detainer while Leachman was in federal custody (27 months). *See Amos*, 646 F.3d at 202, 206 n.26 (finding that speedy-trial clock started with arrest even where defendant fled jurisdiction in which he committed crime and was arrested and held in another jurisdiction under extradition statute). Texas argues that the length of the delay should be calculated as of the time the indictment was filed (24 months). *See United States v. Marion*, 404 U.S. 307, 320 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.").

Whether we view the delay here as having lasted 24 or 27 months, the difference is not dispositive. Leachman acknowledges that this factor can weigh, at most, slightly to moderately in his favor. *See Amos*, 646 F.3d at 206-07 ("A delay must persist for at least eighteen months over and above [the 12-month threshold] for this factor to strongly favor the accused."). Because the delay here was longer than twelve months, we engage in a full *Barker* analysis. The length of delay here weighs against the state, though not heavily. *See Amos*, 646 F.3d at 207; *Goodrum*, 547 F.3d at 258.

### 2. Reason for Delay

Under the second *Barker* factor, we consider the reasons for the delay. *Amos*, 646 F.3d at 207. The burden is on the government to proffer reasons to justify the delay. *Id.* "The weight assigned to a state's reasons for post-accusation delay depends on the reasons proffered." *Goodrum*, 547 F.3d at 258 (citation omitted). "[A] deliberate delay to disadvantage the defense is weighted heavily against the state." *Id.* "[D]elays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state." *Id.* "[U]nexplained or negligent delays . . . weigh against the state, but not

heavily." *Id.* Leachman acknowledges that this factor can weigh, at most, slightly to moderately in his favor. Leachman argues that the first 11 months of delay should be weighed in his favor because had the state trial court appointed counsel while Leachman was in Pennsylvania, counsel could have been ready for trial as soon as Leachman returned to Texas. Leachman argues that the next 16 months of delay should be weighed in his favor because counsel was "forced" upon him when the state trial court denied Leachman's motion to represent himself.

The Supreme Court has held that, for purposes of a speedy-trial analysis, a state may not be charged with delays caused by a defendant's assigned counsel; those delays are attributable to the defendant. *See Vermont v. Brillon*, 556 U.S. 81, 85, 90–93 (2009). However, the state may be charged with delays caused by a trial court's failure to appoint counsel with dispatch. *Id.* Despite Leachman's argument that his counsel was "forced" on him, the Court has not held that an assigned counsel's actions may be counted against the state where a defendant's request to represent himself was denied. The state trial court acknowledged that "it might have been of some help" to Leachman to have counsel while he was in Pennsylvania. However, it also stated that Leachman met with counsel immediately upon his return to Texas and was ready for trial early, that trial was delayed by a series of resets agreed to by Leachman's counsel, and that Leachman requested a continuance at the start of trial. These findings of fact have not been rebutted by clear and convincing evidence.

Even weighing the trial court's decision not to appoint counsel against the state, Leachman has not shown that the state acted in bad faith by intentionally delaying prosecution "to gain some impermissible advantage at trial." *Doggett*, 505 U.S. at 656. Furthermore, as the state trial court found, the resets and continuances were agreed to or requested by Leachman's appointed counsel. This weighs against Leachman. *See Brillon*, 556 U.S. at 90–91. At the

No. 12-20187

same time, the state's proffered reason for the delay—that Leachman was being tried on federal charges in Pennsylvania—do not justify delay. *See Amos*, 646 F.3d at 206 n.26 ("[T]he fact that an accused is in the custody of another sovereign does not absolve a state of its responsibility under the Speedy Trial Clause to prosecute the accused with customary dispatch."). "[U]nexplained or negligent delays . . . weigh against the state, but not heavily." *Goodrum*, 547 F.3d at 258 (internal quotation marks and citation omitted). Weighing these considerations, this factor is not determinative in Leachman's favor.

### 3. Assertion of Right

Under the third *Barker* prong, we ask whether the defendant diligently asserted his right to a speedy trial. *Amos*, 646 F.3d at 207. The defendant's assertion "receives strong evidentiary weight, while failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* (internal quotation marks and citation omitted). "This factor can also cut against the defendant where there was a lengthy delay between his arrest or indictment and his assertion of his speedy-trial right." *Id.* Leachman argues that he timely asserted his right by writing, while he was in custody in Pennsylvania, two letters to the state trial court to complain about delays; by objecting to resets and delays on multiple forms; by filing a "Notice of Preservation," which referenced an alleged earlier-filed speedy-trial motion; and by filing a motion to represent himself. Although the district court found that the record reflected that Leachman waited until trial was underway to file a motion to dismiss for want of a speedy trial, there is some evidence that Leachman asserted his right before trial, including an affidavit of Leachman's federal public defender, the trial-court transcript of the speedy-trial hearing, and letters that Leachman's federal public defender sent to the Texas court regarding Leachman's speedy-trial rights. Accordingly, this factor weighs in Leachman's favor. *See Amos*, 646 F.3d at 207–208 (finding that third factor

22

No. 12-20187

weighed in defendant's favor where record reflected that defendant asserted right on the day he was arrested and several times thereafter in both relevant jurisdictions); *Goodrum*, 547 F.3d at 260 (finding that third factor weighed in defendant's favor where defendant asserted right within two days of receiving detainer notices, "doggedly" asserted right for two years in numerous letters, and moved for dismissal immediately upon initial court appearance).

### 4. Prejudice

Under the fourth *Barker* prong, unless the first three factors weigh heavily in favor of the defendant or the delay is at least five years, *see Goodrum*, 547 F.3d at 260, the burden is on the petitioner to put forth evidence of actual prejudice. *See Divers*, 698 F.3d at 219. Prejudice accounts for the interests protected by the speedy-trial right, including (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Id.* The third interest is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (internal quotation marks and citation omitted). Here, it is significant that the state trial court made factual findings—which we presume to be correct unless Leachman rebuts them by clear and convincing evidence—regarding prejudice.

Leachman argues that the evidence shows that he suffered oppressive pretrial incarceration and extreme anxiety and that he was prejudiced by the fading memories of witnesses and the prosecution's ability to excuse any memory lapse by invoking the delay. The state trial court acknowledged the prison conditions were poor, but not enough to dismiss the case for want of a speedy trial. The court found disingenuous the argument that Leachman was prejudiced because he had forgotten the names and addresses of witnesses. Finally, the court noted that from what it had seen and heard at trial it did not

see any prejudice to Leachman. The district court found that Leachman did not disclose particular instances in which witnesses had difficulty remembering facts that would have favored Leachman's defense. The trial-court transcript reveals only Leachman's own assertions of stress and anxiety and no corroborating evidence of those assertions. This factor thus does not favor Leachman. *See Amos*, 646 F.3d at 208–09 (finding insufficient evidence of prejudice where trial transcript did not reflect that witnesses' memories had faded, especially not in a way that was material to defense); *Goodrum*, 547 F.3d at 264–65 (finding insufficient evidence of prejudice where defendant presented only generalized expressions of anxiety and concern, and where record reflected some denial of access to prison programs but not "greatly worsened" prison conditions).

Thus, any error by the district court in weighing some of the *Barker* factors was harmless. *See Amos*, 646 at 203 n.4; *see also Goodrum*, 547 F.3d at 255. Leachman has not established that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *See, e.g.*, *Goodrum*, 547 F.3d at 257–61 (finding that state appellate court's ruling was not objectively unreasonable where, even though two of the first three *Barker* factors weighed heavily in favor of defendant, defendant was not entitled to a presumption of prejudice, and prejudice prong was not satisfied).

Accordingly, we affirm the district court's dismissal of Leachman's speedy-trial claim.

For the foregoing reasons, we AFFIRM in part and VACATE and REMAND in part.